## Davidson v. Commonwealth.

(Decided March 23, 1917.

### Appeal from Fayette Circuit Court.

1. Criminal Law—Plea of Insanity as Defense—Inquest.—Where, on the trial of one charged with a felony, insanity at the time of the commission of the crime was relied on as a defense, but by verdict of the jury and judgment of the trial court he was found and adjudged guilty, and on appeal the judgment of conviction affirmed by the Court of Appeals, such judgment is conclusive of his sanity at the time of the commission of the crime; and in such state of case the trial court, after the filing therein of the mandate of the Court of Appeals, was without statutory author-

ity to order, on the defendant's motion, a lunacy inquest to determine his condition of mind as of the date of such motion.

2. Criminal Law—Insane Persons—Inquest After Judgment.—There is, in this jurisdiction, no statutory authority for the granting of such an inquest after the pronouncement of judgment and sentence upon the defendant, following his conviction by verdict of the jury, except in cases of capital punishment or pregnancy claimed to exist at the time fixed by the judgment for its execution; but as it ought to be the policy of the state to suspend the execution of the judgments of its criminal courts against persons who, after conviction of crime, may become insane, during the existence of such insanity, notwithstanding the absence of statutory authority, upon the broad humanitarian principle that one who is incapacitated by insanity from understanding the purpose of the law in subjecting him to punishment ought to be exempted therefrom during the continuance of the insanity, a circuit court to which application is made for such an inquest may, by virtue of the inherent power possessed by it, grant the relief, if by proper showing of fact, convinced of the necessity therefor. But in such case the granting or refusal of such inquest is discretionary with the court; and if the defendant's application or motion therefor is unaccompanied by affidavit or other evidence in his behalf strongly tending to show his insanity at the time, the refusal of the court to grant the inquest will not be treated as a final order or reviewed by the Court of Appeals.

3. Criminal Law—Insane Persons—Arrest of Judgment for Crime.— To permit one convicted of crime to arrest the execution of a judgment imposed on him by the court by demanding, as a matter of legal right, an inquiry into his mental condition, would be tantamount to granting him the privilege of thwarting the administration of criminal justice for an indefinite time. All he would have to do would be to continue to move for an inquest.

4. Criminal Law—Insanity of Convict—Inquest.—If, upon or after his incarceration in the penitentiary, a convict's mental condition should make a lunacy inquest necessary, it might upon humane grounds, at the instance of the warden of the penitentiary, be applied for by the Commonwealth or county attorney, or by the appellant himself, through the instrumentality of a writ of habeas corpus; in either of which events, the previous order of a court refusing such an inquest would not bar the proceeding.

ROBERT E. LEE MURPHY for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Dismissing the appeal.

January 25th, 1917, the appellant, Robert M. Davidson, by his attorney, filed in the office of the clerk of the Fayette circuit court the following motion:

"Comes the defendant, by counsel, and moves the court that a lunacy inquest be held so that defendant may be returned to the Eastern Kentucky Insane Asylum, as he had never been discharged and is now hopelessly insane and in a dying condition."

On the 27th day of January, 1917, the court overruled the above motion as shown by the following order:

"This action having been submitted on the motion for a lunacy inquest for the defendant, so that defendant may be returned to the Eastern Kentucky Insane Asylum, and the court being sufficiently advised, it is ordered and adjudged the said motion be overruled, to which ruling of the court the defendant objects and excepts. The defendant prays an appeal to the Court of Appeals, which is granted by the court."

The Commonwealth, by the Attorney General, has entered in this court a motion to dismiss the appeal prosecuted by Davidson from that order, and the question now to be determined is, whether the motion should be sustained. It appears from the record before us that in April, 1915, an indictment was returned against the appellant by the grand jury of Fayette county, charging him with the crime of rape, committed upon the body of an infant female under twelve years of age; and also of having been convicted of a similar offense in the Fayette circuit court at its April term, 1898. After his arrest under the indictment, the appellant, through his counsel, applied to the Fayette circuit court for an inquest by a jury to determine whether he was a person of unsound mind, but the inquest was refused. The motion was made and overruled July 17, 1915. But on September 27, 1915, upon motion of the Commonwealth's attorney, such inquest was ordered and held, at which appellant was, by verdict of the jury, found to be of unsound mind, and by order of the court committed to the Eastern Kentucky Lunatic Asylum, where he was confined about seven months, and then released by the authorities of that institution. Following which discharge, he was tried under the indictment and pleaded the previous inquest and verdict of the jury, finding him to be of unsound mind, as a bar to his prosecution under the indictment. The plea, however, was overruled by the court, whereupon he moved that another inquest be held to determine whether he had recovered his soundness of mind, which motion was

also overruled by the court. The trial was then pro-
ceeded with, and at the conclusion of the Commonwealth's
evidence, appellant, by his counsel, renewed his motion
for an inquest by a jury to determine the condition of his
mind, which motion was again overruled. On the trial
his alleged insanity, in addition to the plea of not guilty,
was relied on as a defense and evidence introduced by him
in support thereof, and also by the Commonwealth to
show that he was of sound mind.

The trial resulted in his conviction, his punishment
being fixed by the verdict of the jury at confinement in
the penitentiary not less than ten years nor more than
ten years and a day. From the judgment entered on that
verdict he prosecuted an appeal to this court, which af-
firmed the judgment of the circuit court. The opinion,
of date October 17, 1916, is reported in 171 Ky. 488. On
November 14, 1916, appellant filed in this court a petition
for a rehearing, which, on December 5, 1916, was over-
ruled. The following expressions from the opinion will
show the conclusion reached by us with respect to ap-
pellant's defense of insanity:

"Upon the question of appellant's insanity at the
time of and after the commission of the act a number of
witnesses were introduced, who testified that, in their
judgment, he was insane. Evidence of insanity of several
of defendant's relatives was introduced, and two physi-
cians testified that, from examinations made of him while
he was in jail before the trial for lunacy in September,
1915, in their judgment, he was at that time insane, and
from recent examinations he was still insane at the time
of the trial, and one of these physicians stated, in his
judgment, appellant had been at least partially irrespon-
sible for a number of years; but, upon the other hand, it
was testified, by the assistant physician at the asylum
where appellant was confined, that from his observations
of the appellant, he was not at any time insane. There
was also evidence of other witnesses that up until the
commission of this offense the appellant worked at his
trade as a carpenter and showed no indications of crim-
inal irresponsibility; that when he was caught in the at-
tempt by the mother of the girl upon whom the attempt
was made, he fled and successfully evaded capture by the
officers who had a warrant for him for some months.
While the preponderance of the testimony in numerical
strength is to the effect that appellant was at times in-
sane and irresponsible, there was ample evidence before
the jury to sustain its verdict that the appellant at the

time of the commission of the act and at the time of the trial was not criminally irresponsible."

It will be observed that appellant's application for the inquest of January 25, 1917, was made after the over-ruling in the Appellate Court of his petition for rehearing, and following the filing in the circuit court of its mandate.

As the condition of appellant's mind, bearing upon the question of his criminal responsibility for the act charged in the indictment was submitted under proper instructions to the jury on his trial and then determined by their verdict, and the judgment entered thereon was affirmed by this court, that verdict and judgment must be regarded as conclusive of his sanity at the time of the commission of the crime; hence, we assume that the motion for the inquest of lunacy last made by him was to prevent the execution of the judgment requiring his confinement in the penitentiary in pursuance of the sentence of the court.

The questions presented by the motion of the Assistant Attorney General are: (1) Was the appellant, as a matter of right, entitled to the inquest last applied for? (2) Is the order refusing the inquest such a final order or judgment as may be appealed from?

As to the first of these questions, we must say that our examination of the Criminal Code and statutes has enabled us to discover no provision that seems to authorize the inquest last applied for in the court below by appellant. In fact, there seems to be no provision authorizing an inquest for lunacy upon the application of the lunatic himself. Section 2162, Kentucky Statutes, provides:

"If any person be of unsound mind, it shall be the duty of the circuit or county court of the county in which he resides, upon application of the attorney for the Commonwealth, or, if he be absent, of the county attorney, to cause an inquest by a jury to be held in open court to inquire into the fact. The court shall appoint some member of the bar to represent and protect the interests and rights of the person alleged to be of unsound mind, and it shall also be the special duty of the attorney for the Commonwealth, or for the county, to prevent the finding of any person as an idiot or lunatic who, in his opinion, is not such; or the finding of any person an idiot who is a lunatic."

It is true that the Commonwealth's or county attorney is expected to, and usually does, act upon an affidavit

or information as to the necessity of the inquest, furnished by some relative, friend or acquaintance of the lunatic, having knowledge of his condition; but it nevertheless seems to be contemplated by the statute that the proceeding shall be instituted and conducted by one of these officers in his official capacity, and we find nowhere in chapter 67, of which section 2162 is a part, any provision that authorizes or allows the inquest upon the initiative of the supposed lunatic or any one for him, other than the officers or one of them named. Such inquest may, however, be ordered by the court in which the defendant is indicted, as authorized by section 156, Criminal Code, which provides, in substance, that if the court shall be of the opinion that there are reasonable grounds to believe that the defendant on trial is insane all proceedings in a trial shall be postponed until a jury be empaneled to inquire whether the defendant is of unsound mind, and if found to be of unsound mind, the court shall direct that he be kept in prison or conveyed by the sheriff to the nearest lunatic asylum and there kept in custody by the officers thereof until he be restored, when he shall be returned to the sheriff on demand to be re-conveyed by him to the jail of the county. Obviously, this section applies when the defendant's soundness of mind is brought in question at the beginning of or during his trial for the offense charged, and before judgment, and was intended to prevent his trial or conviction when his condition of mind is such as to make it improbable that his defense can properly be made. It was evidently under this section that the inquest was held which resulted in the verdict and judgment whereby appellant was found to be of unsound mind and confined in the asylum.

Section 287, Criminal Code, gives the defendant yet another opportunity to demand a lunacy inquest, which opportunity presents itself when he is called upon, after trial, to show cause why judgment should not be entered or sentence pronounced against him in conformity to the verdict. That section provides:

"He may show for cause against the judgment any sufficient ground for a new trial or for arrest of judgment; he may also show that he is insane. If the court be of opinion that there is reasonable ground for believing he is insane, the question of his insanity shall be determined by a jury of twelve qualified jurors to be summoned and empaneled as directed by the court. If the jury do not find him insane judgment shall be pronounced.

If they find him insane, he must be kept in confinement either in the county jail or lunatic asylum until, in the opinion of the court, he becomes sane, when judgment shall be pronounced.''

In Laughlin v. Commonwealth, 18 R. 1640, we held that this section applies to the question of insanity of the accused at the time the judgment is pronounced and not when the offense was committed.

We think it manifest that the several sections of the Criminal Code and Kentucky Statutes referred to have no application to insanity arising after the judgment of conviction has been pronounced. Therefore, the granting of the inquest last demanded by the appellant was not authorized by any of them. Other statutory authority for such inquest, applying alone to cases in which the infliction of capital punishment has been adjudged, and where the insanity arises after the pronouncement of judgment, is conferred by section 1137, subsection 8, Kentucky Statutes, and section 296, Criminal Code, the first providing:

''If the condemned under sentence of death be insane or pregnant with child on the day designated for the execution, said execution shall be suspended until said condemned be restored to his or her right mind or until she be delivered of child, and then said execution shall take place under the warrant of the Governor and at the time herein designated by him unless stayed by due process of law.''

The provisions of the section of the code, *supra*, are as follows:

''If the sheriff (the officer charged with the execution of the judgment) be satisfied that there are reasonable grounds for believing that the defendant is insane or pregnant, he may summon a jury of twelve persons from the jury list, drawn by the clerk, who shall be sworn by the sheriff well and truly to inquire into the insanity or pregnancy of the defendant, and a true inquisition return; they shall examine the defendant and hear any evidence that may be presented; and by a written inquisition, signed by each of them, find as to the insanity or pregnancy. Unless the inquisition find the defendant insane or pregnant, the sheriff shall not suspend the execution; but if the inquisition find the defendant insane or pregnant, he shall suspend the execution and immediately transmit the inquisition to the Governor.''

It is patent that neither of these sections can have any application here.

It is here proper to remark that it ought to be the
policy of the state to suspend the execution of the judg-
ments of its criminal courts against persons who may
after conviction have become insane, during the exist-
ence of such insanity; and if such policy is not expressed
in legislative enactments, its exercise by the courts ought
nevertheless to be permissible, not as a right to be as-
serted by the criminal, but upon the broad humanitarian
principle that one who is incapacitated by insanity from
understanding the purpose of the law in subjecting him
to punishment is entitled to the suspension of the punish-
ment so long as his insanity continues. The suspension
of the punishment during the period of insanity cannot,
however, have the legal effect of mitigating the offense.
Upon the restoration of his sanity the criminal must
again be subjected to the punishment inflicted by the
judgment of the court, or such part thereof as may re-
main unsatisfied. Whether the appellant was entitled
to the inquest last demanded by him, upon the ground
above referred to, is a question that has not been passed
on in this jurisdiction. It has, however, been decided in
several others. Lyons v. Chretien, Judge, 114 La. 82;
State v. Nordstrom, 21 Wash. 403, 53 L. R. A. 584;
Baughn, &c., v. St. of Ga., 168 U. S. 516; Laros v. Com-
monwealth, 84 Pa. St. R. 200. In Lyons v. Chretien,
Judge, *supra,* the facts seem to be almost identical with
those of the instant case. The relator was indicted for
murder and the sole defense interposed was insanity.
He was found guilty as charged and when called to the
bar for sentence, his then insanity was urged as a rea-
son why sentence should not be pronounced. The dis-
trict judge thereupon appointed a commission *de lunatico
inquirendo,* who, after a careful examination of the re-
lator, reported to the court that he was of sound mind.
He was then sentenced to death pursuant to the verdict,
but took an appeal to the Supreme Court of the state,
which affirmed the judgment of conviction. After the fil-
ing, in the district court, of the mandate of the Supreme
Court, the relator, through his attorneys, presented a
petition to the judge of the district court, setting forth
his then alleged insanity, asking that he should not cer-
tify the record to the Governor of the state for his ap-
proval, and the issuance of the death warrant, and pray-
ing that a committee of competent physicians be ap-
pointed to examine into his mental condition, and after
evidence heard and the committee's finding, that he be
sent to the state insane asylum, there to remain until

cured. The district judge refused to grant the prayer of the relator's petition, whereupon his counsel moved for a suspensive appeal, which was denied. Thereafter, the relator entered a proceeding in the Supreme Court for a mandamus to compel the judge of the district court to grant him a suspensive appeal from the order denying the above relief prayed for by him. In denying the mandamus, the Supreme Court, among other things, said:

"Under the statutes of this state, execution of a death sentence is based on a warrant issued by the governor of the state after considering a copy of the whole record of the proceedings. The court which imposed the sentence has no power to supervise, control or suspend its execution. When such sentence has been affirmed by the Supreme Court, the duties of the judge and clerk of the trial court are merely ministerial. The duty of the judge in such case is to order the decree of this court to be filed and executed, and the duty of the clerk is to forward a copy of the record to the governor of the state. The statutes do not provide any mode for determining the question of the sanity *vel non* of a person sentenced to death.

"Act No. 105, p. 153, of 1896, provides for the interdiction of convicts confined in the penitentiary, on the petition of the warden and the clerk of the board of control.

"In such cases, if the judge be satisfied that the convict has become insane since his imprisonment, he orders the removal of the convict from the penitentiary to the asylum for the insane, to be there detained and treated until he shall recover his sanity. It is obvious that to permit convicts to arrest the execution of sentences imposed on them by demanding as a matter of legal right, the appointment of medical experts to examine into their mental condition, would be tantamount to granting them the privilege of thwarting the administration of criminal justice for an indefinite time. The act of 1896 does not grant any right to convicts to initiate such proceedings, but the matter is left to the discretion of the warden of the penitentiary. Reasoning from analogy, a similar initiative should be left to the custodian of convicts sentenced to death. If persons under sentence of death appeal to the courts or to the executive department for a suspension of sentence on the ground of alleged insanity, it is discretionary with the court or the executive to take action in the premises. It has been held in other states that in such cases the question is one not of legal

right, but of humanity, and that the ruling of the court is not reviewable by appeal or writ of error.

"In the case of relator, his counsel presented to the court a petition, unaccompanied by affidavit or other evidence, tending to show present insanity. The respondent judge refused to appoint a commission *de lunatico* on the mere suggestion of counsel for relator. If such a ruling be reviewable by this court, then there is nothing to prevent other similar applications and other appeals by relator, resulting in the indefinite postponement of the execution of the sentence of death pronounced against him.

"Our appellate jurisdiction in criminal cases is confined to final judgments, and, being of opinion that we have no jurisdiction to review on appeal the action of the respondent judge in the premises, this application for a mandamus is denied."

The soundness of the reasoning employed by the Louisiana Supreme Court in arriving at the conclusion expressed in the opinion, *supra,* demonstrates its correctness, and makes the rule announced in that case equally applicable to the instant case. Conceding, therefore, that, though without statutory authority to grant the lunacy inquest last moved for by the appellant, the Fayette circuit court nevertheless had authority to allow the inquest, not because appellant had a legal right thereto, but as a matter of humanity, its refusal to grant the inquest, even if reviewable on appeal, was not unauthorized, as the motion was unaccompanied by affidavit or other evidence furnished by the appellant, or any one for him, tending to show that he was, at the time, insane. At most, as the inquest was not required by statutory authority, it was discretionary with the court to grant or overrule the motion; and, in the absence of any evidence showing a necessity for such an inquiry into appellant's condition of mind, it cannot be said that the action of the court in refusing it was an abuse of discretion. As, in substance, well said in the opinion, *supra,* it is obvious that to permit convicts to arrest the execution of sentence imposed on them by demanding, as a matter of legal right, an inquiry into their mental condition, would be tantamount to granting them the privilege of thwarting the administration of criminal justice for an indefinite time. In other words, all the convict would have to do would be to continue to move for an inquest.

As the Fayette circuit court was without statutory authority to grant the inquest demanded by appellant

after entry of the judgment of conviction and pronouncement of sentence upon him, the order refusing it entered by that court is not appealable. On the other hand, if it can be said that the court had such authority as a matter of humanity, the right of appeal does not exist at the common law or arise by inference. In this jurisdiction the right of appeal is purely statutory, and in criminal prosecutions is conferred by sections 334-347, Criminal Code. In addition to what has been said, it is to be remarked that the order refusing the inquest is not a final order, but one that may be set aside at any time by the lower court at its discretion. It was, in legal effect, a mere dismissal of the appellant's application for the inquest without prejudice. If, after his incarceration in the penitentiary, appellant's mental condition should make another lunacy inquest necessary, it might, at the instance of the warden of the penitentiary, be applied for by the Commonwealth or county attorney; or by the appellant himself through the instrumentality of a writ of *habeas corpus*, in either of which events, the order of the Fayette circuit court complained of would not bar such proceeding.

For the reasons indicated, motion of the Attorney General to dismiss the appeal is sustained and the appeal dismissed. Whole court sitting.