## Warner v. Commonwealth.

(Decided June 19, 1934.)

362

RANSOM L. BRYANT and C. C. CRABTREE for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and CHARLES H. FAIR and CHARLES F. MONTGOMERY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellant, Sylvester Warner, twenty-four years old, freely confessed to committing a deliberate, premeditated, and ghastly murder, and upon his trial offered no defense. The judgment condemns him to death. When Sherman Richards went to see about his traps, his attention was attracted to a white cloth just under the surface of the river in Casey county near Liberty. In endeavoring to pull it out with a pole he discovered that it was the body of a man wrapped in a sheet. When assistance had come the body was lifted from the water and it was found that there was another man wired to it. The heads of both men were crushed and presented a most gruesome spectacle. They were identified as the bodies of John White and his son, Clay White, who had lived alone in a cabin in the neighborhood. The father was about eighty years old and the son, a retired soldier, was about sixty. At their home a bloody club and a shotgun were found in the yard and other evidences of

the tragedy were scattered about over the premises. Within the cabin was a bloody mechanic's hammer; everything was in great disorder, and very gory.

Three young men of the neighborhood, Sylvester Warner, Huston Jeffries, and Carl Hardin were missing, and other circumstances, including the ownership of the hammer and gun, pointed to their guilt. They were soon arrested in the southern part of Ohio in possession of Clay White's automobile, and each of them was ghoulishly wearing a portion of his clothing. They also had some rings and other things belonging to the dead man. When the county judge and sheriff of Casey county went for them, Warner freely told them about the crime and admitted his guilty participation. The prisoners were brought to Lexington, and there is no contradiction that Warner there freely related all the sordid and shocking details of the brutal tragedy. His statement was transcribed and, after being read by the accused and its accuracy confirmed, was signed and sworn to by him.

The substance of that confession, read to the jury, is that the young men while drinking on Friday agreed to take the automobile of Clay White for a trip and to tie him and his father up until they could get away and dispose of the car. On Saturday they agreed the best thing to do was to kill both of the men and put their bodies in the river in order to accomplish their purpose. On Sunday, December 3, 1933, they selected the hole in the river where they would put the bodies, carried a heavy piece of iron for weighing them down to a convenient place, and otherwise perfected the scheme. That evening about 8 o'clock they took a hammer from the defendant's home and went to the cabin, where they found the Whites had gone to bed. Jeffries went in and woke them up, and the three of them went in the house and talked awhile and also did some drinking. Jeffries, who had been most intimate with Clay White and had been accustomed to driving his machine for him, suggested that he go outside for a private conversation. When they got him in the yard, he (Warner) and Jeffries both clubbed him to death. The old man had stayed in bed. They went back into the house and beat him to death with the hammer. After ransacking the place and taking two rings from Clay White's fingers, they tied up the bodies with wire and took them in the automobile to the place where they were found the

next morning. Taking Warner's wife, they went to the home of her father in Ohio, near where they were arrested. The only semblance of an excuse, as stated in the confession, is that they were drinking and but for that fact would not have committed the crime.

It is submitted as a ground for reversal of the judgment that it was error to admit evidence of the killing of John White, particularly of the ghastly condition of his body, and as well to permit the introduction of the meager clothing taken from it, since the defendant was on trial only for the murder of Clay White. It is argued that this evidence tended to arouse the passion and prejudice of the jury and to magnify the crime, causing a verdict which otherwise might not have been returned. It is a wise, just, and fundamental rule that an accused person will be tried for one offense at a time and that the introduction of evidence showing, or tending to show, his commission of other separate and independent crimes will not be permitted. However, there are several distinct exceptions to that rule which necessity demands in aid of detecting and punishing crime. Among those exceptions is where two or more crimes are constituent parts of one transaction and proof of one necessitates proof of the other, or where the evidence of other crimes is to complete the res gestæ. The murder of John White and the condition of his body showing his death to have been brought about in the same savage and brutal way at the same time was so intermixed and blended with the murder of the other man as to form an indivisible criminal transaction. Full proof of one crime could not be given without showing the other. Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; Thomas v. Commonwealth, 185 Ky. 226, 214 S. W. 929; Keller v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 998; Jordan v. Commonwealth, 240 Ky. 391, 42 S. W. (2d) 509; Hudson v. Commonwealth, 249 Ky. 845, 61 S. W. (2d) 874.

In the closing argument the commonwealth's attorney stated: "No one has taken the witness stand and denied anything said by the Commonwealth." It is claimed that this violated the proprieties of argument as a reference to the failure of the defendant to testify in his own behalf. The accused, of course, had the constitutional right to rely upon the commonwealth to prove him guilty and to take cover behind the "shield of silence." It is in recognition of that right that the

courts hold it prejudicial error for counsel of the commonwealth to comment upon a defendant's failure to testify. But in many cases this court has held that a reference such as that made here as to the absence of testimony refuting the evidence of the commonwealth is not regarded as a comment upon the failure of the defendant himself to testify. Ridner v. Commonwealth, 242 Ky. 557, 46 S. W. (2d) 1102; Hanks v. Commonwealth, 248 Ky. 203, 58 S. W. (2d) 394, 395. Upon this trial the court admonished the jury to disregard the statement of the prosecuting attorney, and specifically repeated the admonition in the written instructions.

The only other ground upon which reversal is asked is that it was error to permit the Casey county officers to testify to the admissions and confessions freely made to them at the jail in Ohio, because the commonwealth had not introduced the Ohio officers to prove that there had been no sweating or coercion of the accused before he was interviewed by the Kentucky officers. Aside from the fact that the subsequent confession, signed and sworn to in Lexington, was freely and voluntarily given, the claim of sweating is a defensive one, and where an admission is sought to be avoided because involuntary, it is incumbent upon the defendant to establish that fact.

There is no mitigating circumstance in this case. The accused has been accorded a fair trial. A jury of his countrymen have, under the authority of society and organized justice, decreed that he shall pay the extreme penalty for his brutal crime. It is the duty of this court to affirm that judgment.

In accordance with chapter 54 of the Acts of the 1934 Session of the General Assembly, the judgment of affirmance will fix the day of execution as the fifth Friday following the date the mandate of this court.

Judgment affirmed.

Whole court sitting.