## Stucker et al. v. Commonwealth.

(Decided Dec. 6, 1935.)

GUY H. BRIGGS and J. P. CHENAULT for appellants.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is prosecuted from judgments of the Franklin circuit court and the Mercer circuit court, wherein the trial courts sustained in each instance special demurrers to appellants' respective petitions filed therein, requesting an inquest relative to the mental condition of Neal Bowman, when then under death sentence for murder.

Neal Bowman, the subject of the insanity inquests petitioned in both the Franklin and Mercer circuit courts, was indicted by the Mercer county grand jury, charged with the crime of willful murder. Upon his trial of the charge, wherein no plea of insanity, but only one of not guilty, was made, he was convicted and sentenced to death. Upon his motion for a new trial being overruled, judgment was pronounced against him.

An appeal was thereupon prosecuted, and, as provided by law, the sentence was suspended by the clerk of the Court of Appeals pending its final determination of the appeal.

During the interim of the pendency of the appeal, Bowman was by the Mercer circuit court ordered removed and incarcerated in the reformatory at Frankfort for safekeeping.

While such was the situation, on September 13, 1935, a petition was filed, and verified, by L. D. Stucker (chaplain of the reformatory at Frankfort), in the Franklin circuit court, in which it was asserted that "Neal Bowman is a person of unsound mind and a lunatic, whose father and mother are non-residents of the state of Kentucky; that he is unmarried; and that he is in the custody of the warden of the state reformatory" for safekeeping, under an order of the Mercer circuit court, and requesting that an inquest be held by the Franklin circuit court to determine his then sanity.

The matter having been brought before the court on September 15, 1935, the commonwealth, by special demurrer, objected to the jurisdiction of the Franklin circuit court to try the said case, and also attacked the sufficiency of the petition and affidavit filed by L. D. Stucker by general demurrer thereto.

The trial court, in sustaining the special demurrer of the commonwealth to its jurisdiction (it is stated in brief), based its decision on the fact that Bowman was

only temporarily held in the reformatory at Frankfort upon the order of the judge of the Mercer circuit court, and that technically Bowman was still subject to the orders of the Mercer circuit court and without the jurisdiction of the Franklin circuit court. Also it sustained the general demurrer to the petition. Whereupon, the petitioner declining to plead further, the petition was dismissed and judgment rendered in favor of the commonwealth, to all of which the petitioner excepted and prayed an appeal to the Court of Appeals, which was granted.

On September 26, following these proceedings for a lunacy inquest had in the Franklin circuit court, appellant D. T. Brummette, a "reputable citizen" of Mercer county, filed a like petition, with supporting affidavits, in the Mercer circuit court, containing substantially the same allegations and the same prayer as the previous petition filed by Stucker in the Franklin circuit court, wherein Brummette requested that an inquest relative to the mental condition of Bowman be held and conducted in the Mercer circuit court.

A special demurrer was also filed thereto by the commonwealth and county attorneys, representing it in the proceeding, wherein they particularly set out as grounds that the court had no jurisdiction of the person of Neal Bowman, a nonresident of Mercer county and then absent therefrom, nor did it have any jurisdiction of the proceeding, in that Bowman was not a resident of the county nor then in said county, etc., and was further without jurisdiction because the said Bowman was then in the custody of the warden of the State Reformatory at Frankfort, committed to his custody by order of the Mercer circuit court after sentence pronounced therein for murder, and that the prosecution in which said order was made had been appealed to the Court of Appeals and was then pending therein, and that during such pendency of the appeal, the Mercer circuit court could make no order relative to the disposition of the person of Neal Bowman, committed to the said warden under order made in the case which was then pending before the Mercer circuit court; and, further, that no jurisdiction was vested in the court to pass upon the sanity or insanity of Bowman when not a resident of nor located within Mercer county, and when then under sentence for crime.

The trial court sustained said special demurrer and dismissed the petition, to which order the petitioner excepted and prayed an appeal to the Court of Appeals, which was granted.

Complaining of these rulings, the petitioner Stucker thereupon brought an original action in this court, under section 110 of the Constitution, to require it to determine which of the aforesaid trial courts had jurisdiction to determine the sanity of Bowman upon appropriate application by an individual, while the same was pending in this court upon appeal and awaiting its action upon Bowman's petition for rehearing.

This court denied the petition for a writ of prohibition, in accordance with its well-established, uniform rule of construction of section 110, that adequate relief was afforded the petitioner by appeal.

Due to such pronouncement made in denying the prohibitory writ, appeals have been taken from the rulings of both the Franklin and Mercer circuit courts in sustaining the special demurrer, which are here consolidated, discussed, and treated as one appeal, and which we will likewise so deal with and dispose of them in one opinion.

The appellants urge that the findings of the lower courts are reversibly erroneous in their respective rulings; by the Franklin circuit court in sustaining both the special and general demurrers therein filed, and by the Mercer circuit court in sustaining the special demurrer to its jurisdiction.

In support of such contention, counsel for appellant Stucker cites as statutory authority therefor the present law of Kentucky relating to the matter of conducting inquests, and requiring that all requests for determining the sanity of persons in this state must be held in the circuit court, which was enacted by the General Assembly in its 1928 session, the pertinent sections of which, relating to the question here involved (sections 216aa-68, 216aa-69 and 216aa-70) read as follows:

"Sec. 216aa-68. *Inquest; Jurisdiction.*—The circuit courts of the several counties of this state shall have exclusive jurisdiction of all inquests concerning the condition of the mind or mental faculty

of persons. When no circuit court is in session in the county, inquests of insane persons may be held by a judge of a circuit court or by the presiding judge of the county court, but in no case shall an inquest upon an idiot or a person convicted of crime and confined in the penitentiary or reformatory, be held except in the circuit court, and if the inquest is upon a convict it shall only be held at a regular term of said court.

"Sec. 216aa-69. *Inquest, except Criminals; How Instituted.*—Any reputable person being a resident of the county and having knowledge of a person in the county not serving a sentence in a penitentiary or reformatory under a criminal charge, who appears to be either feeble-minded, an epileptic, insane person or an idiot, who is not in a state or private institution for the care of such person may file with the clerk of the circuit court a petition in writing for the trial and commitment of such person and setting forth facts verified by affidavit. It shall be sufficient if the affidavit is upon information and belief.

"Sec. 216aa-70. *Petition for Inquest; What it shall State.*—The petition, verified as required in the preceding section, shall set forth the name and residence of the person concerning whom the petition is filed, the name, residence of the parent or parents, if known, and of the husband or wife, if any, and the name and residence of the person having custody, control and supervision of such person; or if no such person is known to the petitioner, then of some near relative or that such is unknown to the petitioner."

By this act, it will be noted that the circuit court of the county in which any person lives, or happens to be, is vested with exclusive and complete jurisdiction to conduct proceedings and try the question of the sanity of such person, subject only to the exceptions (as to criminals) mentioned in the above statute, and, further, that the actual, rather than the technical, location of the person to be tried determines which court is vested with jurisdiction to hold the inquest. Further, it is contended by counsel for Brummette that, it appearing that as Bowman is still technically under the jurisdiction of the Mercer circuit court, if his appeal

should be upheld by this court and a new trial directed, he would be answerable to that court under the requirement of section 216aa-69, supra, while counsel for Stucker argues that inasmuch as Bowman is not now actually or physically present in Mercer county, as required, it results that regardless of how violently insane he might become while remaining incarcerated in the reformatory at Frankfort for safe keeping, no "reputable person" or "citizen" of Mercer county might ever hear or know of such condition having developed, and for such reason, he contends that the Legislature, considering such possibilities, enacted the law (section 216aa-69, supra), so as to require the actual, rather than the technical, location of the person to be tried within the county to determine the question of what court should have jurisdiction to hold the inquest upon the mental condition of the convicted prisoner.

On the other hand, counsel for Brummette, in his joint appeal from the decision of the Mercer circuit court in holding it to be without jurisdiction to adjudge the petitioned inquest upon Bowman's mental condition, under the circumstances here presented, takes the position that the quoted sections of the statute above cited and relied on by counsel for Stucker are not here applicable nor of controlling influence, as they apply to civil rather than to criminal cases in the holding of inquests; that the holding of inquests in the latter cases is regulated by the common law and Criminal Code of Practice.

While the exact question thus presented upon these consolidated appeals for our determination may be considered as one of first impression in this court, we are yet not without precedents, much analogous in their facts to those of the instant case, in which are enunciated principles which we deem strongly in point and of controlling influence in determining the one question here presented for our review as to the propriety of the rulings of the lower trial courts in sustaining the special demurrers to the petitions as therein brought.

This question, so here presented, is not one relating to or involving the right of Bowman to have a lunacy inquest to determine his responsibility for the commission of the charged offense by reason of any claim made that he was then insane, or that such was

his condition of mental irresponsibility when later called for trial upon the charge. No such plea or defense was then made, entitling him to have his mental condition inquired into at such stages of his case under the applicable provisions of section 156 of the Criminal Code of Practice, nor was such claim of insanity interposed, or any showing later made thereof by the defendant after the jury's return of its verdict finding him guilty of murder, against the court's entering judgment and sentence thereon, as is provided for under section 287 of the Criminal Code of Practice, directing that, upon the court's concluding from such showing at such time made that there exist reasonable grounds for believing the defendant insane, it should then conduct an inquest to determine the question of his insanity.

Such are the provisions of the Criminal Code of Practice as to the right of defendant, before judgment, to have an inquest held as to his mental condition, where charged with the commission of a criminal offense. Up to the time of his final sentence, that discretion as to the holding of inquests in criminal cases is vested in the trial judge.

We think it is manifest, as argued by counsel for appellant Brummette, that these several sections of Kentucky Statutes (sections 216aa-68, 216aa-69 and 216aa-70) referred to have no application to the case of insanity of the defendant arising after the judgment of conviction has been pronounced against him. Therefore, the trial courts' refusal to grant the inquest here petitioned in each case for appellant, when under sentence of death, was proper, as the same, we are of the opinion, was not authorized under the facts and applicable statutory authority upon which the inquest in each petition was based and sought.

However, statutory authority for such inquest, applying alone to cases in which infliction of capital punishment has been adjudged, and where the insanity arises after the pronouncement of the judgment, is conferred by section 1137-8, Kentucky Statutes, and section 296, Criminal Code of Practice, to which we will hereinafter refer.

From our view of the rules relating to this subject, we find that the provisions of our Criminal Code of

Practice as to the conducting of lunacy inquests in criminal cases correspond very closely to the provisions and rules of the common law in respect thereto, where practically the same rights are given to the defendant, to have the question of his mental responsibility inquired into, whether it related to the time of his charged commission of the offense or to the latter stages in his prosecution therefor, as shown supra.

To the same effect is it so declared in the case of Barrett v. Commonwealth, 202 Ky. 153, 259 S. W. (2d) 25, 26, where one Frank Thomas had been convicted of murder in the Jefferson circuit court and his punishment fixed at death. Thereafter, in compliance with section 1137, Kentucky Statutes, he was conveyed to the State Penitentiary at Eddyville to await the execution of the sentence. A few days prior to the day fixed by the Governor for his execution, he filed a petition in the Lyons circuit court, in accordance with the provisions of section 272a, Kentucky Statutes, alleging that he was then insane and asking for an inquisition to determine that matter. Upon proceedings had thereunder, in accordance with the said statutory provisions, he was found to be a person of unsound mind and was by the judgment of the court ordered taken from the custody of the warden of the penitentiary at Eddyville and committed to the Western State Hospital at Hopkinsville.

The court, in a strong and well-considered opinion, therein discussed the propriety of the original inquest granted, and there held (under the provisions of the then section 272a, Kentucky Statutes, providing much as does section 216aa-69, Kentucky Statutes, that inquests might be begun by any ''reputable'' person, either from knowledge or from information and belief, under the elaborate procedure mapped out by the provisions of said section of the statutes, and whereunder it became incumbent upon the court to hold the inquest) that ''they were intended to apply only to civil rights of persons and property, and not to cover inquests growing out of criminal cases which are based on entirely different principles and which are regulated by the common law and the Criminal Code of Practice''; that such was the character and limitation of section 272a of the Statutes (chapter 54, Acts 1918) was clearly demonstrated by reference to the title of

the act, showing that it was intended to provide "for the 'commitment, care, treatment, training, segregation and custody of feeble-minded, epileptic and insane persons.' "

Our conclusion is that sections 216aa-68, 216aa-69, and 216aa-70 (chapter 16, Acts 1928), relied upon by appellant Stucker as statutory authority for giving defendant the right to the lunacy inquest here petitioned for, is subject to the same construction and limitation given by the court in the Barrett Case, supra, to the provisions of section 272a of the Statutes, in holding that such statutes were intended to apply only to civil and property rights and not to cover inquests growing out of criminal cases, for the like reasons cited in the Barrett opinion in respect to section 272a, in that it is indicated both by the title and language of these later sections (sections 216aa-68, 216aa-69, 216aa-70), which replace section 272a of the acts of 1918 (chapter 54), that they were intended to relate to cases of "inquest, except criminal," and in their providing that "any reputable person being a resident of the county and having knowledge of a person in the county not serving a sentence in a penitentiary or reformatory under a criminal charge * * * may file * * * a petition," etc., and in further providing, section 216aa-68, that "in no case shall an inquest upon an idiot or a person convicted of crime and confined in the penitentiary or reformatory, be held except in the circuit court, and if the inquest is upon a convict it shall only be held at a regular term of said court."

Where an inquest is asked as to a defendant against whom judgment has been pronounced and sentence entered, the petition therefor must be presented in harmony with the provisions of sections 294 to 296 of the Criminal Code of Practice and section 1137-8 of the statutes, amendatory of said Code sections, such statutory authority applying alone to cases in which the infliction of capital punishment has been adjudged, as here, and where the insanity arises after pronouncement of the judgment. Section 294, Criminal Code of Practice, directs the sheriff to execute the death penalty, section 295 authorizes him to suspend the sentence under the conditions of section 296, providing that after the death sentence, if the sheriff is satisfied there are reasonable grounds for believing that the defendant is

insane or pregnant, he may summon a jury of twelve persons, etc., who shall be sworn by the sheriff well and truly to inquire into the insanity or pregnancy of the defendant, and a true inquisition return; they shall examine the defendant and hear any evidence that may be presented; and by a written inquisition, signed by each of them, find as to the insanity or pregnancy. These sections have been amended by the Acts of 1910 (chapter 38) and further amended by the Acts of March, 1920 (chapter 163), now sections 1137-1 to 1137-10, Kentucky Statutes. These require the death penalty to be executed by the warden of the penitentiary within its walls, except in convictions for the crime of rape, which is still to be executed by the sheriff of the county in which the crime is committed:

As stated in the Barrett Case, supra:

"From these provisions it would seem that the sheriff is still authorized to hold inquests and suspend execution in cases of insanity developing after the death sentence in cases of rape, and in other cases until the removal of the convict to the penitentiary. Garman v. Com., 183 Ky. 455, 209 S. W. 528.

"As to other capital cases in which the sentence is executed by the warden of the penitentiary, no other mention is made of the manner in which the insanity or pregnancy of the condemned is to be ascertained nor as to the officer authorized to suspend the judgment of execution in the event the condemned is found to be insane; hence there is some question as to the proper procedure."

As to this, the opinion continues:

"We have seen that it has always been the policy of the law in such cases for the person charged with the administration of the law to exercise discretion as to holding inquests in criminal cases. Up to the time of final sentence that discretion is vested in the trial judge. After sentence the policy of our laws seems to be to vest it in the executioner—formerly the sheriff in all cases, now the sheriff in some, and the warden of the penitentiary in others. By reason and analogy, we can see no reason why, after the removal of the convict to the penitentiary, such an inquest may not

be held by the warden of the penitentiary if he is satisfied there are reasonable grounds to believe the condemned insane or pregnant.

"In this respect he simply takes the place of the sheriff and performs the same duties except as to the place and manner of execution. He has custody of the condemned and is informed as to his mental condition."

We find nowhere in the statutes, or Code any provision that authorizes or allows an inquest upon the initiative of a supposed lunatic or any one for him after judgment and sentence of the condemned or upon the petition of any reputable citizen other than the named officers or that one of them having custody of him.

In the case of Spann v. State, 47 Ga. 549, 551, a somewhat similar case, an inquest was sought by the sheriff having in custody the defendant, who had been convicted of murder and sentenced to be hanged. In respect to the granting of the inquest there allowed, the Supreme Court said:

"The whole proceeding is merely a stay of execution, and is based rather upon the public will, and a sense of propriety, than on any right in the prisoner. * * * It is rather a perversion of terms to call an inquisition of this kind the act of a Court, and to exercise in reference to it the writ of certiorari. The whole proceeding is rather an inquiry based on public propriety and decency, than a matter of right."

Also as to this, see Laros v. Commonwealth, 84 Pa. 200, in which it was said:

"The plea [of insanity] at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation. The rights of the prisoner as an offender on trial for an offence are not involved. He has had the benefit of a jury trial, and it is now the court only which must be satisfied on the score of humanity."

Also, in Davidson v. Commonwealth, 174 Ky. 789, 192 S. W. 846, it is held, as indicated by syllabus 2 thereof, that

"There is, in this jurisdiction, no statutory author-

ity for the granting of such an inquest after the pronouncement of judgment and sentence upon the defendant, following his conviction by verdict of the jury, except in cases of capital punishment or pregnancy claimed to exist at the time fixed by the judgment for its execution; but as it ought to be the policy of the state to suspend the execution of the judgments of its criminal courts against persons who, after conviction of crime, may become insane, during the existence of such insanity, notwithstanding the absence of statutory authority, upon the broad humanitarian principle that one who is incapacitated by insanity from understanding the purpose of the law in subjecting him to punishment ought to be exempted therefrom during the continuance of the insanity, a circuit court to which application is made for such an inquest may, by virtue of the inherent power possessed by it, grant the relief, if by proper showing of fact, convinced of the necessity therefor. But in such case the granting or refusal of such inquest is discretionary with the court; and if the defendant's application or motion therefor is unaccompanied by affidavit or other evidence in his behalf strongly tending to show his insanity at the time, the refusal of the court to grant the inquest will not be treated as a final order or reviewed by the Court of Appeals,'' and, further, ''To permit one convicted of crime to arrest the execution of a judgment imposed on him by the court by demanding as a matter of legal right, an inquiry into his mental condition, would be tantamount to granting him the privilege of thwarting the administration of criminal justice for an indefinite time. All he would have to do would be to continue to move for an inquest.''

To like effect, see, also, Barrett v. Commonwealth, supra, and the numerous authorities therein cited.

The soundness of the reasoning employed in these quoted cases, both of our own and foreign jurisdictions, in arriving at the conclusion expressed in those opinions, demonstrates the correctness of the rule therein announced and influences us to conclude that the rule so announced therein is equally applicable to the determination of the instant case. Therefore, so influenced by the principles therein announced, we are of

the opinion that the rulings of the lower courts in sustaining the special demurrers to the petitions and the judgments dismissing them were in accord with the approved principles and reasons hereinabove discussed, and as such were proper and should be affirmed.

The judgment in each case, dismissing the petition for inquest for lack of jurisdiction, is therefore affirmed.

Whole court sitting.