## Denny v. Commonwealth.

(Decided June 24, 1938.)

420

E. SELBY WIGGINS and O. P. JACKSON for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Parkie Denny appeals from a judgment sentencing him to die for the murder of his wife. He has had four trials. On the first he was sentenced to death, but the circuit court set the verdict aside on the ground of improper argument of the Commonwealth's Attorney, which, however, we subsequently certified as not prejudicial. Commonwealth v. Denny, 271 Ky. 608, 112 S. W. (2d) 1016. The juries disagreed on the next two trials. The defense was insanity. The record discloses a sordid murder by a man of low mentality.

Denny and his wife returned to the vicinity of Moberly, in Madison County, in the summer of 1936, after having lived a while in Ohio. They stayed here and there, but seemed to have made their headquarters with Ivan Denny, his brother-in-law and first cousin. One night in September, about half past one o'clock, he returned there without his wife, saying that he was

going to meet her and another man and wife in town. There had been some talk about Ivan's daughter going back to Ohio with Denny and his wife, so she left with him early that morning. The two alone went to Ohio. He told the girl that his wife had gone to Illinois for a visit with her half sister. About five weeks later the girl returned home and several days afterward Denny followed her. In the meantime he had written several letters referring to what he and his wife were doing and signing some of the letters with the names of both. Meanwhile the decapitated and decomposed body of a woman was discovered in a cane patch a short distance from a lane. It was practically nude and appeared to have been dragged to the place. Two days later the head of the body was found some distance away on the other side of the lane. The body was not then identified.

On October 24th Parkie Denny came to the home of his niece, Mrs. Will Rhodus. He stated that her father, Ivan Denny, had written him about the finding of a woman's body in the neighborhood, and was anxious to know whether or not it had been identified. He persisted in talking about the discovery and asked many questions concerning it. Finally he stated that it was that of Ethel, his wife. Information shortly reached the officers as to the identity of the body. When they went to Ivan Denny's home to ask about Parkie, Ivan told them he was in the house. One of the officers went in and asked Denny to go out in the road and he went to the automobile where other officers were. The sheriff asked him about his wife and her whereabouts. He made several contradictory and unreasonable statements. Finally the sheriff replied that he could tell him that his wife was in the Richmond cemetery. About that time Ivan Denny came out of the house with the deputy sheriff who had remained there with him and his daughter. He was very much disturbed and asked Parkie why he had killed Ethel. He replied that she was too old for him; that he ought not to have married her; that he couldn't get along with her; and that he thought he could "get by with it." This was the first admission of guilt. The accused was taken to jail and shortly thereafter dictated a confession which was written out by the county attorney, read to and signed by him. This statement declares that it was being made freely; that he had killed his wife in his automobile while parked on a lane by striking her with a hammer;

that he had dragged her body to the place where it was found; cut off her head, and had taken it to the point where it was found. There are many other details which confirm the statements of the confession and which also indicate an extreme hardness of sensibility or lack of consciousness of the enormity of his act.

The defendant did not testify. It was established that as a youth he was dull and unable to learn anything. After he had grown up he still wanted to play with little children. His father's sister died in an asylum for the insane; his grandfather was insane; and his uncle committed suicide. Several acts done and statements made after the killing which are indicative of abnormality were disclosed in the evidence. Three doctors testified. They agreed that the accused is a moron with the mentality of a child eight or twelve years old. In answer to a hypothetical question, which included the details of the murder and the preceding and subsequent circumstances and actions of the defendant, Dr. Baker expressed the opinion that he was of unsound mind. Dr. Hume testified that he at first thought the man was feigning, but from several observations he reached the conclusion that he was "the ordinary sort of moron" and sexual pervert and that he did not have the mental resistance of a normal mind. Dr. Robinson considered him a man with an arrested mentality, without the reasoning power to control himself, but in a certain measure he should know right from wrong.

We do not find any cause for reversing the judgment although appellant's counsel submit several grounds as authorizing it.

The evidence fully warranted the verdict, for while there was no contradictory medical testimony, it is to be remembered that insanity is a defense, and is to be submitted, as it was here, along with all the circumstances.

The statements made to the officers at the home of Ivan Denny and the confession signed by the accused cannot be deemed to have been procured by sweating in violation of the statutes. We have not given the detail of the entire conversation of the officers with the defendant as related by the former, but there is nothing to indicate any plying with questions or other wrongful means denounced by the statute. Section 1649b-1.

There was at first the questioning of the accused as to the whereabouts of his wife, but the first admission of guilt came in response to the question of his brother-in-law and cousin. By their cross-examination defendant's counsel endeavored to elicit evidence tending to establish that the confession was not freely and voluntarily made, but they were not able to disclose that unwarranted influence or coercion was brought to bear upon the accused. The evidence was properly admitted. Warner v. Commonwealth, 255 Ky. 361, 74 S. W. (2d) 201.

The Commonwealth's Attorney read the testimony given upon a former trial by the witness who had found the body and who had since died. Section 4643, Statutes, provides that the testimony of any witness taken by the official stenographer may, in the discretion of the presiding judge, be used in a subsequent trial where the testimony of such witness cannot be procured, provided that in criminal cases such testimony shall be used only upon the consent of the defendant. The defendant objected to the reading of the testimony of the deceased witness. But the provision as to the consent of the defendant applies only to living witnesses, and the reading of former testimony of a deceased witness is proper where the accuracy of the transcript shall have been proved. Fuqua v. Commonwealth, 118 Ky. 578, 81 S. W. 923, 26 Ky. Law Rep. 420; Austin v. Commonwealth, 124 Ky. 55, 98 S. W. 295, 30 Ky. Law Rep. 295; Lake v. Commonwealth, 104 S. W. 1003, 1004, 31 Ky. Law Rep. 1232. The appellant really does not question this construction of the statute, but suggests the impropriety of the testimony being read by the Commonwealth's Attorney. The statute does not specify who shall read such transcript, and, while perhaps the stenographer who made it should do so if available, we perceive no good reason why an attorney in the case should not.

The fairness of placing the jury in charge of a deputy sheriff, who was a material witness in the case, is questioned. There is no suggestion of anything improper having occurred. There was no objection to this at the time nor is this assigned as a ground in support of the defendant's motion for a new trial, so that the point cannot be sustained. Sebree v. Commonwealth, 260 Ky. 526, 86 S. W. (2d) 282.

The jury which convicted the defendant was

brought from Fayette County. Section 194, Criminal Code of Practice, authorizes the summoning of jurors from an adjoining county only after the court has made a fair effort to obtain a jury in the county where the crime is charged to have been committed. It is stated that nine jurors had been accepted and the remainder could easily have been obtained in Madison County. The record does not disclose that. An order recites that the Commonwealth's Attorney moved to have a special venire summoned from some adjoining county, "and the court being satisfied from the efforts made at the May term of court that a jury cannot be obtained from Madison County, and the attorneys for the defendant agreeing that such is the condition" the venire was directed to be summoned from Fayette County, which adjoins Madison. A jury not having been obtained from the first group summoned another was directed to be obtained, the order reciting that it was upon the agreement of attorneys for the Commonwealth and for the defense. We have, therefore, a case where an effort had been made according to the requiremnts of the Code and a special agreement of the defendant that the jury should be obtained from another county. The ground here asserted, therefore, cannot be sustained.

The verdict was returned October 13, 1937. On October 28th, before entry of the judgment, the defendant's counsel moved for a special hearing on the question of his sanity. Section 156, Criminal Code of Practice, provides that "If the court shall be of opinion that there are reasonable grounds to believe that the defendant is insane, all proceedings in the trial shall be postponed until a jury be impanelled to inquire whether the defendant is of unsound mind"; and then if such be found, what shall be done with the defendant. Section 287, Criminal Code of Practice, permits a defendant to show as against the judgment that he is insane, and "if the court be of opinion that there is reasonable ground for believing he is insane, the question of his insanity shall be determined by a jury of twelve qualified jurors, to be summoned and impaneled as directed by the court." Further steps to be taken are outlined in that section. The trial court did not pass upon the motion made for the defense for a special insanity hearing, but ordered that it "be allowed to pend during the pendency of this appeal," that is, the appeal from

the judgment theretofore granted. It is to be observed that the first mentioned Code provision is applicable during the course of a trial, and the latter after judgment, with a view of postponing its execution. The motion here came between the verdict and the judgment. The ruling upon that motion was in effect to overrule it without prejudice, for the court proceeded to render the judgment. But in any event, the law gives the trial judge discretion in the matter, and we have held that such a ruling when the motion is made during the course of the trial will not be reversed without an abuse of discretion. Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519; White v. Commonwealth, 197 Ky. 79, 245 S. W. 892; Davidson v. Commonwealth, 174 Ky. 789, 192 S. W. 846. When the ruling is under Section 287, after conviction, no appeal lies from a refusal of the trial court to grant an inquest of lunacy. Davidson v. Commonwealth, supra. If the defendant has remained in the Madison County jail pending the appeal, the situation seems to be yet within the control of the circuit court. See Garman v. Commonwealth, 183 Ky. 445, 209 S. W. 528; Stucker v. Commonwealth, 261 Ky. 618, 88 S. W. (2d) 280.

The judgment is affirmed.

Whole court sitting except Judge Clay.