**Willard TERRY, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 17, 1963.

Concurring Opinion May 20, 1963.

As Modified on Denial of Rehearing

Oct. 18, 1963.

Claude Asbury, W. G. Wheeler, Catlettsburg, for appellant.

John B. Breckinridge, Atty. Gen., James G. Osborne, Asst. Atty. Gen., for appellee.

WILLIAMS, Judge.

The appellant, Willard Terry, was tried in the Boyd Circuit Court and was convicted of the murder of his son. His punishment was fixed at death. Although no bill of exceptions was filed, we have reviewed the entire record in this case on the basis of the principles discussed in Anderson v. Commonwealth, 302 Ky. 275, 194 S.W.2d 530.

The facts are uncontradicted. Appellant operated a small store in Boyd County

and lived on the premises alone after his wife divorced him, which was about two years prior to the prosecution of this case. He had frequently used liquor to excess during a period extending over many years. There was testimony that he became violently irrational sometimes when drunk, but it does not appear that wild irrationality necessarily accompanied his drinking.

On the Sunday of the fatal event, appellant had been drinking. There is no evidence to indicate how much. He appeared in a belligerent mood at the residence of his ex-wife and their children. After chasing her with a knife, he departed only to soon return and attempt to gain entrance to the house. She had locked the door and when he finally gave up, he vowed to kill her on his return. Sometime later appellant came back with a gun and, accosting his ex-wife, he told her to start praying as he was going to kill her. She was unarmed and appears to have done nothing to provoke or excite him. When appellant shot his ex-wife in the abdomen one of their sons, John Terry, entered the house screaming in alarm. Appellant fired on his son two or three times, immediately killing him. Another son witnessed the tragedy.

Appellant was tried by jury twice. He was found guilty and sentenced to death each time. The first verdict was set aside by the trial court. The judgment rendered on the second verdict is here on appeal.

■ As the appellant's defense was not guilty by reason of insanity, the initial question is whether the trial court erred in refusing him a sanity hearing as per Section 287, Criminal Code of Practice. We held in Denny v. Commonwealth, 274 Ky. 419, 118 S.W.2d 778, as well as in other cases, that no appeal lies from the trial court's refusal to grant a lunacy hearing. The wording of Section 287 indicates a discretionary power and, especially in view of the trial court's appointment of a psychiatrist to examine the appellant and testify at the trial, we find no abuse of discretion.

■ Appellant objects to the trial court's failure to instruct the jury that if they should find the appellant not guilty by reason of insanity, they should so state in their verdict. As we said in Phelps v. Commonwealth, 32 S.W. 470, 17 Ky.Law Rep. 706, Section 268 of the Criminal Code of Practice is only discretionary and the omission of such instruction is not prejudicial to appellant's rights. Particularly is this true where, as here, the only defense is insanity.

■ Appellant claims double jeopardy on the ground there were two indictments returned before the first trial. As he was never brought to trial on the first indictment there can be no question of double jeopardy on the two indictments. Appellant was tried and convicted on the second indictment and subsequently a motion for a new trial was granted. As recently as Foster v. Commonwealth, Ky., 348 S.W.2d 759, we have held that, since the granting of a new trial puts the parties in the same position as if there had been no trial, the accused is not thereby twice put in jeopardy.

The trial court instructed the jury on (1) murder; (2) voluntary manslaughter; (3) reasonable doubt; and (4) insanity. The instructions as given were in accord with the interpretation and concept of the law then in vogue. However, in the first paragraph of the dissenting opinion in Newsome v. Commonwealth, Ky., 366 S.W.2d 174, Judge Palmore issued the following warning:

"Conceding that a combination of the M'Naghten and irresistible impulse tests is still fundamentally the most practical approach to the defense of 'insanity,' it can and should be put in a clearer and better form than is stated in our standard instruction, taken from Abbott v. Com., 1900, 107 Ky. 624, 21 K.L.R. 1372, 55 S.W. 196. See Stanley's Instructions, § 901."

■ The rule stated in section 4.01 of the Model Penal Code, approved by the American Law Institute in 1962, provides

that the defendant has a defense if at the time he committed the act he did not have substantial capacity either to appreciate the criminality of his conduct, or if he did understand it to resist his impulse to violate the law. But, in either case, his conduct must have been the result of mental disease or defect. Mental disease or defect is defined as "not including an abnormality manifested only by repeated criminal or otherwise anti-social conduct." We believe this rule properly reflects the law.

■ The trial court instructed the jury in the second paragraph of Instruction No. 4 as follows:

"The law presumes every man sane until the contrary is shown by the evidence and before the defendant can be excused on the ground of insanity, the jury must believe from the evidence that the defendant, Willard Terry, was, at the time of the killing, without sufficient reason to know what he was doing, or had not sufficient reason to know right from wrong, or that, as the result of mental unsoundness he had not then sufficient will power to govern his actions by reason of some insane impulse which he could not resist or control."

Recognizing full well that the Instruction was given according to the law as interpreted at that time, nevertheless we must declare it erroneous. The confusion which results from the language of that instruction must be avoided now and in the future.

In reaching this conclusion we are not concerned so much with what the bare words of the insanity instruction might mean to a jury as we are with the recognized fact that the traditional phraseology heretofore employed, by appearing to define the law in terms of moral right and wrong instead of legal criminality, materially impairs the capacity of medical witnesses to lend real assistance to the court and jury in determining the defendant's mental state. Dr. Winfred Overholser, in his article "Criminal Responsibility: A Psychiatrist's

Viewpoint," published in American Bar Association Journal, June 1962, said:

"* * * The problem of causation of conduct is within the psychiatrist's province, whereas the M'Naghten rule and the frame of reference in which the questions under that rule are asked pose a moral query which is not within the competence of the psychiatrist."

■ Upon a new trial the court will instruct the jury as follows:

"The law presumes every man sane until the contrary is shown by the evidence. Before the defendant can be excused on the ground of insanity the jury must believe from the evidence that at the time of the killing, the defendant, as a result of mental disease or defect, (a) was substantially unable to understand that he was violating the law, or, (b) if he did understand it, was nevertheless substantially unable to resist his impulse to commit the illegal act."

The instructions given did not adequately state the appellant's defense.

The judgment is reversed, with directions that appellant be granted a new trial.

STEWART, C. J., and MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

The very point on which the judgment here is reversed was thoroughly considered by this Court and decided the other way less than thirty days ago. See Newsome v. Commonwealth, Ky., 366 S.W.2d 174. The question was considered by the entire Court in the Newsome case before an opinion affirming was rendered on December 14, 1962. The question was again considered in a most thorough manner on petition for rehearing. It was ably presented by counsel on original brief and in the petition. The petition for rehearing was overruled on April 19, 1963.

The present majority opinion does not honor the decision in the Newsome case by distinguishing it or overruling it. It simply ignores it except to refer to the dissenting opinion therein.

The merits of the M'Naughten rule as embodied in Kentucky criminal law for more than sixty-three years are set forth in the Newsome opinion. Further discussion would appear to be useless. The instruction in its present form has been found to do justice for a long time. 3 Stanley's Instructions, Sections 901, 906, pages 214, 220; Abbott v. Commonwealth, 107 Ky. 624, 21 Ky.Law Rep. 1372, 55 S.W. 196; Banks v. Commonwealth, 145 Ky. 800, 141 S.W. 380; Lindsay v. Commonwealth, 230 Ky. 718, 20 S.W.2d 738. The difference between the old and the new forms is technical or, as stated by Judge Palmore in his dissent in the Newsome case (quoted in the present majority opinion), the new form is "clearer and better." A jury could not detect the technical difference and would doubtless reach the same verdict under either form. This is certainly true under the facts of the present case.

At any rate, this is not such a case as calls for a holding that for all these past years the convictions where there was an insanity instruction were erroneous. In this case, the plea of insanity is not even justified by the evidence because, as stated in the majority opinion, the appellant "had been drinking" and "appeared in a belligerent mood." The mere fact that the appellant was drunk does not entitle him to an insanity instruction. To authorize an insanity instruction there must be evidence of a diseased mind or something more than a violent uncontrollable desire to kill. Golden v. Commonwealth, 275 Ky. 208, 121 S.W.2d 21. Possibly an instruction under Arnold v. Commonwealth, 194 Ky. 421, 240 S.W. 87, may have been justified.

In this case, the facts are that the appellant was drunk and drunk only. Whether he got himself in such condition as a substitute for courage was a question for the jury. At any rate, he wounded his wife and killed his son without provocation. He has been twice tried and given the death sentence. To reverse the judgment in this case for the reasons given is a gross miscarriage of justice.

However, there is a further serious problem that arises by reason of the majority opinion that should be of great concern to the bench and bar alike. The able judge who tried this case gave the accepted instruction of long standing. Since the Newsome opinion has been printed, and presumably has been read by the trial judge, the opinion in this case will come as a shock since no error was found in his trying of the case. This Court has merely changed a technical rule by judicial fiat.

The consternation of the trial judge at such a sudden unjustifiable change in the law will be shared by others of the profession. Rules of law of long standing should not be cast aside lightly but only upon a sound and meritorious basis. Such rules are not flapjacks and should not be tossed about as such. I cannot subscribe to an extension of the theory that has been ascribed to a former member of this Court that the law is what this Court says it is— this week. Such change destroys all of the stability and orderliness that are characteristic of the law. If such is to be the case, to paraphrase the writing of the late Judge Sims, maybe one should merely consider it one of the vicissitudes of life and go on his way rejoicing, comforted by the thought that this week's erroneous decision may be corrected next week. Jackson v. Commonwealth, Ky., 247 S.W.2d 52.

For these reasons I respectfully dissent.

STEWART, C. J., joins me in this dissent.

PALMORE, Judge (concurring).

I do not give to the bar and bench so little credit as to believe that today's majority opinion will be the occasion of "con-

sternation." This wee step forward in the wake of the giant strides made by the medical profession over the past 63 years in approaching an understanding of the human mind will be greeted by the enlightened as some assurance that the common law is not an ostrich. Certainly the medical witness, on whose testimony life and death may hang in the balance, will recognize that the improvement in terminology is far more than "technical."

The dissenting opinion's discussion of the recent Newsome case would leave the impression that the court had resolved and settled the question. The fact is that five members of the court were then dissatisfied with the old instruction and would not have affirmed in that case had it involved a death sentence. The Terry case was under submission at the time, and it was clearly understood that the old instruction would not survive it.

That the appellant was not insane, but merely drunk, is accepted by the dissenting opinion as a foregone conclusion. The majority of us are not gifted with such clairvoyance. We are not sure. If indeed it is true, we have no fear that another jury will not be able to say so. It must not be forgotten that the law exists for those whose rights are on trial, not for the courts. The inconvenience that may result from a retrial of this case—even the dubious "consternation" that may be felt in some quarters—could hardly outweigh the interest of the man whose life is on trial. To hustle him off to the electric chair when we are not altogether sure would be nothing short of reprehensible.

What the dissenting opinion terms "judicial fiat" is the substance of the common law. Who created the old instruction in the first place? The court. Whose responsibility is it, then, that the instruction be kept applicable to the facts of life as they are known to exist? The same court's. If this process had not been recognized throughout the development of the common

law over the past 800 years we would still be trying cases by battle-axe. Only the axe-maker can have sensed any "consternation" at being put out of business.

The reference to a remark by one of our departed members to the effect that the law is what the courts say it is does the injustice of appearing not to understand it. It was not, of course, an original or a humorous comment. Holmes, for example, voiced the thought that law can be nothing more than a prophecy of what the courts will do in a given case. This is not to be taken as meaning, and was not intended by Judge Cammack to imply, that the rule of law is by court whim. It means merely that in a real and practical sense the decision of the courts is the final test and best evidence of what the law is in any given case. No student of jurisprudence in the world of Anglo-American law would dispute that proposition.