Judge Mills
delivered the opinion.
The appellants, who were complainants in the court below, filed their bill to obtain relief against sundry adverse patents, claiming under the following entry:
“January 2, 1784 — Jobs Bradford,assignee, and Charles Morgan, assignee, as tenants in common, enters 4541 acres of laud on part of a treasury warrant. No 2o,S32, begio-⅞⅛§⅝the most.southward corner of John Marshall’s er.- *581 üy of 1.0,QQO acres, Between the Ohio,and .north side.qf Licking creek, and .running S. 60 ,E. 1200 poles, thence from each «nd nf said line S. 30 VV. go far that .a l¡nepar--allel to the first will include the quantity.”
John Marshall’s entry of 10,000 acres, was made the same day, and its calls are,
“Beginning at Edward Payne’s and .Charles MorganJs westward corner of their entry of 3060 acres in Armstead Churchill’s line, and .running with , him , and emending tks same S. SO W. 1600 poles, .and also .from the beginning with said Payne’s and Morgan’s S. #0 ,E.,to their ,pext,cor-ner; thence with another of their lines N 3u E .to William Said’s corner in said line, thence with Said’s line§. @0 E. so far-that a line parallel to the ¡¡first line, together with a line at right angles .from the end of the^rst .line, will include the quantity.”
.Edward ¡Payne and Charles Morgans .enttgv.named p the Iasi, was made January 1,1784, and contains the following calls:
“Beginning at Henry Payne’s and Charles Morgan, as-see. southwardly corner of their entry of 5000 acres qo the Ohio, and running with their line to their corner in Armstead .Churchill’s line; thence witlrChurchill's line, so far that a line at right angles will include the quantity.”
Henry Payne and Charles Morgan, on tbe.same day with the last, had made their entry calling,
“To begin at William Kennedy’s eastwardly corner of his .400 acre entry on the Ohio, and running with his lifte to his southward corner, which is beginning corner to Arm-stead Churchill’s 24.000 acre entry, and running thence with said Churchill’s line S. 30 W. 1000 poles; and from the beginning up the river, so far that a line parallel to,the first, and also another at right angles thereto, shall include the quantity.” t
On the 16tb May, 1780, William Kennedy had made.hjis entry of 400 acres, thus describing the land:
“Beginning at Charles Curd’s lower corner on the banJk of the Ohio, thence with the meanders of the river, and binding on the same, 200 poles; thence extending out from the river,800 poles, including a spring at the bottom flf # hill, and backfor quantity.”
Ou the same day with this last entry, Charles Cord bad made, bis entry calling,
“⅞ lie <?.n tbesogth side qf Ohio, near the lower end of *582 (he second large bottom above the mouth of the little MR amL begioning at a hoop ash and sugar tree on the bark of the said river, on the upper side of a small run; thence upwards with the courses of the Ohio, and binding thereon, 400 poles to two buckeyes and a beech on the bank of the river, thence S. 50 VV. and back from the before mentioned corners for quantity.”
The other entries alluded to io this chain lead to the same point, and can have no important bearing, except to fix the true position of those which cali for them. The following is given as a sketch of their calls:
Armstead Churchill’s is daied December 29, 1782, for 34,000 acres, and calls as follows, to wit:
“Beginning at the most southwardly corner of an entry made in the name of William Kennedy, for 400 acres, lying on the Ohio river near the lower end of the second large bottom above the mouth of the little Miami; thence from the above mentioned corner of said entry S. 30 W. 2000 poles; thence from each end of this line at right angles wesiwardly, so far that a straight line drawn parallel to the line of 2000 poles, shall include the quantity.”
Will. Said’s entry, called for in the foregoing chain, is dated January 1, 1784, for 2458 acres, and describes its position thus:
“Beginning at Thomas Lewis and Charles Morgan’s southward corner of their entry of 4661 acres on the Ohio, and running with their line N. 60 VV. to their corner, in Henry Payne’s and Charles Morgan’s line; thence with their line to, and along, Edward Payne’s and Charles Morgan’s line, being S. 30 VV so far that lines at right angles may include the quantity.”
Thomas Lewis and Charles Morgan depends on the same chain, and is dated on the same day with the entry last recited, including the quantity as described above, and is located as follows:
“Beginning at Henry Payne’s and Charles Morgan’s upper corner of their entry of 5000 acres, on the Ohio; and runniug with said line S. 30 VV. 1200 poles; thence S. 60 IS. so far that a line of N. 30 E. to the Ohio, and thence down the same to the beginning, will include the quantity.”
It is evident from the foregoing detail, that, all this chain of entries depends essentially on William Kennedy’s 400 acre entry, and that before any enquiry into their validity ⅛ other respects, it will be nectasarv to ascertain w bet bet' *583 Kennedy’s claim can be supported. It, in its turn, rests upon Charles Curds 800 acres. Without the call for Cord it cannot be supported.
The Ohio is “l>tori?u® nection with the history of t*1’3 country,
The Ohio is an object notorious in the history of the counirv ever since its first discovery. It is not necessary to determine whether the little Miami is entitled to be considered asa good call on the grade of historical evidence, for it is proved in this cause to have been notoriously known by this name previous to, and at the date of, the eldest of the afore recited entries. The place claimed in this suit for the location of Ctird and Kennedy, is in the second bottom south of Ohio, above the mouth of the little Miami, on the opposite shore. This bottom is proved to be six or seven miles in length, and the beginning of Curd is claimed about one mile above the loner end of tbis bottom. Precisely at the lower end of the bottom, or where the hill approaches the river, there is a small run discharging itself into the river. Above this run, at the distance of fifty-eight poles, is a second small run, at which place the bottom is ten poles wide A' the distance of forty-eight poles further, is a third small run. The bottom there ¡¿twelve poles wide. Still progressing up the river, is a fourth branch, where the bottom is a little wider than at the third; and above this last named run, about one hundred and twenty polts, is the small run claimed as the beginning corner of Cord. Above the branch claimed as Curd’s beginning, is a hoop ash and sugar tree, claimed by the appellants as their beginning. Just above the mouth of the next lowest branch, being the fourth in the above series, stands also a hoop ash and sugar tree. Also at, or within a few yards above, the mouth of the next lowest branch, being the third as befare counted, is a standing sugar tree ana remains of a fallen hoop ash. At the branch still further down, being that ot e nearest the termination of the bottom, and the second one as before numbered, no such trees are found immediately above the mouth of the run, but they are found within fifty or sixty yards above it, and hoop ashes arid sugar trees are shewn to be numerous in the bottom below the beginning claimed. It is remarkable that the entry of Curd is particular in describing the trees “on the bank of Ohio;” but bow near they are to the mouth of the run, we are not told: The locator has contented him-scll with saying they are “above,” without saying bow far. J\o aid, then, can be derived from the trees called forja *584 séSícting for this entry. They are not' described ai mark-*⅜ or 'n *rtJ’ distinguished'from Other trees of tb# same kind. If this call is essential to this entry, it is evidently’too uncertain to sustain the claim. If, on the contrary, this call is held to be immaterial, and not such an one as will vitiate it, as was held by this court in a case somewhat similar, of Greenup vs. Lyne’s heirs, 2 Bibb, 369, (which is the most favorable construction that can be given to it) it seems to result shat Curd’s beginning cannot remain at the branch where he is surveyed. His calls, with'" the trees, fixes him near the lo wer end of the bottom. literally means nót at the lower end, but stt near it that there were ño intervening objects of description'.
catlin1 gin at the " mouth of a loweTend1 of a given tom,must gin at me run^nearest6 to the lower end of the °t om.
CaUs may be rejeemd aa mistaken, tion of tne objects mus> iT petent for a party to shew hea¡ea^s & omft othsré.*
If he intended to go beyond the first run, which appeared after the bottom had commenced, he would' more pro-bábly have called for the first, second or third, from the lower end of the bottom. Each inquirer, it is conceived, passing up the bottom, would have stopped at the first run, which was near the end of if, and readily have concluded that was the place intended. According to this construction then, Curd ought to commence oír the margin of the river, at the mouth of the run before denominated the second, at the distance of two hundred and siity-two poles from where he is surveyed. If Kennedy is placed at his beginning, he will then include none of the land, which he now includes. But if Kennedy is fixed to Curd, at the lowest branch as we have supposed, there are other calls in Kennedy’s entry which cannot be rejected. It most include a “ spring at the bottom of a bill.” If the article “ the” had been used, it might be supposed that the i-iv-r bill was intended. But any hill equally answers the description of the entry,-which might be found within the distance of eight hundred poies. A spring is shewn at the hill ascending from the river just below the branch claimed by the appellants, and two others are shewn situated nearly in a similar position as to two other ^ ^ No aid then can be derived from the springs shewn in favor of the entry, and it iS not shewn wbat spring, or whether anv can be included by surveying at branch. The spring, as described in this entry* was intended as an object not to be omitted, and its position might vary the course which Kennedy ought to run from the river. Calls have been rejected in entries as »i*t»keiir when tfieir true position was shown1; but it ⅛ *585 uow settled, by numerous decisions, that a party cannot exhibit what calls he pleases, and omit others which might affect the figure of his survey if shewn, and yet sustain his eBfrv.
We therefore conceive that the circuit court did right in dismissing the bill, and the decision must be affirmed, but without costs, as the appellees have made default in this court.