## Turk v. Martin, Commonwealth's Attorney et al.

(Decided January 21, 1930.)

C. C. GRASSHAM, MILLER HUGHES, M. C. ANDERSON and NOEL ROGERS for appellant.

I. B. MARTIN and W. J. WEBB for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

The appellant, Lucian Turk, was indicted by the grand jury of Carlisle county, which indictment charged him with the crime of murder. The evidence before the grand jury was taken down by a stenographer at the request of the commonwealth's attorney. The appellant applied to the commonwealth's attorney and also to the stenographer for a copy of the stenographic record that was made by her while the grand jury was examining the witnesses in the investigation of the alleged offense. He offered to pay for a copy of a transcript of the evidence. The stenographer, acting under the advice of the commonwealth's attorney, refused to make a transcript of the evidence for the appellant. Upon his failure to obtain a transcript of the evidence, he instituted this action in equity, asking the court to grant a mandamus requiring the commonwealth's attorney and the stenographer, one or both, to accept the fees tendered and offered to be paid for the record, and requiring that an official transcript of the evidence be delivered to him.

Both a special and general demurrer were filed to the petition. The basis of the special demurrer was that the stenographer resided in Ballard county, and that the alleged failure to furnish a transcript of evidence related to a prosecution pending in the Carlisle circuit court, and that for these reasons the Graves circuit court was without jurisdiction to determine the questions involved. Without waiving either the special or general demurrer the appellant filed an answer. The answer admits that the stenographer made stenographic notes of the evidence heard before the grand jury relating to the charge against the appellant. It was admitted that the commonwealth's attorney directed the stenographer not to furnish a copy of the transcript of the evidence to the appellant, and that the stenographer, acting upon his advice, refused to do so. It was denied that appellant tendered the money to pay for the transcript which he demanded.

After the pleadings had been made up, there was a stipulation to the effect that a copy of the transcript had been demanded by the appellant of the stenographer, and that she had declined to furnish it under the advice of the commonwealth's attorney. It was stipulated that appellant directed the copy of the transcript to be made at his expense, and it was further agreed that the commonwealth's attorney had not directed the stenographer to transcribe her notes.

Upon a final hearing the chancellor denied appellant the relief sought. The chancellor was of the opinion that, under the provisions of chapter 48 of the Acts of the General Assembly of 1922, the stenographer taking notes of evidence before the grand jury can only transcribe the notes upon order from the commonwealth's attorney, and that a defendant, in an indictment returned by a grand jury where such notes were taken, has no right, constitutional or otherwise, to compel the commonwealth's attorney to furnish him a copy of the evidence heard by the grand jury, or to require that officer to exercise his discretion and order, or direct, the stenographer to transcribe the notes of the evidence for the purpose of enabling him to obtain a copy of it.

The question presented is an interesting one. The grand jury comes from the common law. It is true the rules governing it have been modified by statute, but now, as then, it is a body composed of freeholders of the county whose function it is to inquire into the commission of crime, and to find indictments against supposed offenders. It cannot be said that it is a judicial tribunal, but rather it is an accusing body. It is of very ancient origin, and its powers have been developed through a process of evolution. Its powers were much greater in its beginning under the common law of England than are its powers today. The grand jury in this state is defined by statutes, and its duties are likewise prescribed.

It is true, as argued by counsel for appellees, that it has always been the policy of the law that the investigations and deliberations of a grand jury should be behind closed doors, and that the result of its labors should not be disclosed. It has been thought that the secrecy of the proceedings in the grand jury room are in furtherance of justice. The purpose of keeping secret the proceedings in the grand jury room is to insure a full and free investigation of all offenses, and that the witnesses who

appear before that body may know that what they say will be held in confidence. 12 R. C. L. p. 1039, states the rule to be that it is the policy of the law to require the utmost secrecy as to the grand jury's proceedings while the grand jury is in session; but the purposes of this policy of the law are largely accomplished, so far as concerns the evidence adduced, after the indictment has been found and the accused has been taken into custody and the grand jury finally discharged. The witness has no privilege to have this testimony treated as a confidential communication, and his testimony may be disclosed, whenever it becomes material to the administration of justice.

It could not be well contended that the Legislature may not make provision for the disclosure of the testimony of witnesses before the grand jury. The question before the court is whether the Legislature has done so in this state by the provisions of chapter 48 of the Acts of 1922. That chapter purports to be an amendment to section 110 of the Criminal Code. It authorizes the commonwealth's attorney to appoint a stenographer, who, upon his order, shall attend any sessions of the grand jury, and who may be present during an examination of any witness and make full and correct notes of the testimony, and, when ordered by the commonwealth's attorney, the stenographer shall transcribe the notes and deliver the transcript to the commonwealth's attorney, properly certified by the stenographer, and the transcript shall be kept by that officer for his use, and it may be introduced and used in court as competent and legal evidence for the purpose of contradicting any witness whose testimony was taken upon the hearing before the grand jury. Then follows a provision regulating the fees to be charged by the stenographer, and the concluding sentence in the first section of the act is as follows:

"Said stenographer shall make out a correct and full transcript of such testimony so taken, when directed to make same by the commonwealth's attorney, and the same shall be promptly delivered to the commonwealth's attorney."

Undoubtedly it was the purpose of the first section of the act to allow the stenographer in the grand jury room at the instance of the commonwealth's attorney, so that notes might be taken of the evidence and transcribed for the use of the commonwealth's attorney.

The second section of the act is the repealing clause, but there is a third section, which follows the repealing clause, and which is as follows:

> "Any person indicted by any grand jury for any crime or misdemeanor shall have a right to procure a copy of said stenographic record or any part thereof by paying the prescribed fee for said report."

The meaning of an act must be gathered from the language used, accepted in its ordinary sense. The act under consideration first allows a stenographer in the grand jury room to make stenographic notes of the evidence. It then allows the commonwealth's attorney to have a transcript of the evidence. After that is provided, the Legislature, as is apperent from the act itself, thought it wise to allow the accused to procure a copy of the stenographic record, or any part thereof, by paying the prescribed fee. There may be some doubt left in the mind, after reading the act, as to whether the third section relates to the transcript which has been made for the commonwealth's attorney, or whether it relates to a transcript of the stenographic notes, which the accused may obtain from the stenographer.

Accepting the language in its ordinary meaning, it appears to the court that it was the purpose of the Legislature to place the accused in this respect on an equality with the commonwealth's attorney. The commonwealth's attorney may apply to the stenographer and obtain a transcript of the evidence. The accused may apply to the stenographer and obtain a transcript of the whole of the evidence relating to the charge against him, or any part thereof. There is nothing unfair in this construction of the law. Criminal procedure was provided largely for the protection of the individual. The state makes the laws, and provides a punishment for their violation; but, when an individual is charged with their violation, the machinery of the law is provided, so that he may have the question legally determined as to whether he has transgressed the laws of the state. It would be manifestly unfair to allow the state to have a transcript of the evidence heard before the grand jury, so that the commonwealth's attorney might be better enabled to present his evidence to the trial jury, and not allow the accused the same privilege. If this construc-

tion of the law be unwise, the Legislature has full power to repeal section 3 of the act.

There is no duty on the commonwealth's attorney to furnish the accused his transcript, or a copy of it or any part of it; but when the accused demands of the stenographer a transcript of the evidence or any part of it, it should be furnished to the accused upon the payment of legal fees.

The trial court was correct in denying a writ against the commonwealth's attorney to compel him to furnish a copy of his record, or any part of it, to the accused, but he was in error in denying the writ against the stenographer. The stenographer, upon the demand of the accused, should furnish a transcript of that part of the evidence demanded.

A further point is made by the appellees, and that is that the act is unconstitutional, in that its title is not broad enough to authorize legislation requiring the furnishing of the transcript of the evidence to the accused. A number of cases are cited, but the construction has been so often before the court that we will not burden the record by a long citation of authorities. The case of Wiemer v. Commissioners Sinking Fund of Louisville, 124 Ky. 377, 99 S. W. 242, 244, 30 Ky. Law Rep. 523, which is cited and relied on by appellees, is as good a case as any for consideration. In that case we find this language: "While it is true that a title expressing the general subject will cover a great variety of related matters, yet it cannot support a provision foreign to such subject."

The title to the act relates to persons that may be allowed in the grand jury room with the grand jury. A person so allowed in the grand jury room must be there for some purpose, and, if that purpose is related to the subject-matter in the title, the title is sufficient. It was further said in the same opinion: "All that is required is that the body of the act should be so related to the title as to be easily and naturally embraced within its terms, or, as it is sometimes said, they must be germane to each other."

The making of the transcript of the notes by a person allowed in the grand jury room with the grand jury is germane to the allowing of the person in the grand jury room, and for that reason we think that the making of the transcript is related to the matters mentioned in the title of the act, and that it is therefore sufficient.

Another objection urged to the act is that it is unreasonable and against public policy. The Legislature declares the public policy of the state, and the courts are bound by that declaration, unless the legislative act is inhibited by some constitutional provision. It is true that section 112 of the Criminal Code makes it the duty of every grand juror to keep secret whatever he himself or any other grand juror may have said, or in what manner he, or any other grand juror, may have voted on matters before them. But that does not reach the question under consideration. It is still the duty of grand jurors to obey section 112 of the Criminal Code, and the act of 1922 is not in conflict with that section of the Code. It is also true that in the case of Franklin v. Commonwealth, 105 Ky. 237, 48 S. W. 986, 20 Ky. Law Rep. 1137, this court held that the accused could not require the delivery to him of the minutes that were kept by the grand jury, and which had been delivered to the commonwealth's attorney, saying that it was the duty of the foreman of the grand jury to communicate to the attorney for the commonwealth, when required, the substance of the testimony before the grand jury. There had been no law, at the time that case was decided, authorizing the accused to receive the minutes of the grand jury, or any information as to the evidence heard before that body. It may be that the act is not for the best interest of the public, but with that the court cannot concern itself.

Judgment is affirmed as to commonwealth's attorney, reversed as to stenographer, and remanded, with directions for proceedings consistent with this opinion.