## Poyner v. Commonwealth.

(Decided Oct. 11, 1938.)

814

J. E. WARREN for appellant.

HUBERT MEREDITH, Attorney ·General, and W. F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Byan Poyner, appellant, was indicted by the grand jury of Graves county in November, 1937, for the killing of Maurice Gorrell on Sunday night, October 17, 1937. Appellant's first trial, which took place the latter part of November, 1937, resulted in a hung jury. Upon his second trial, which took place in March, 1938, he was found guilty of voluntary manslaughter and the jury fixed his punishment at confinement in the State penitentiary for 21 years. From the judgment on this verdict Poyner appeals.

Reversal is urged by appellant on the following grounds: (1) All the substantive evidence to be relied upon by the Commonwealth should have been produced before the grand jury, and the appellant, Poyner, afforded an opportunity to obtain from the grand jury stenographer a copy of the transcript of the evidence.

(2) Appellant's substantial rights were violated by the procedure followed by the Commonwealth's attorney in having the Commonwealth's witnesses testify at a coroner's inquest, and causing a stenographic report thereof to be prepared, and in withholding this evidence from the defendant, and in introducing before the grand jury only a part of the evidence taken at the inquest, and in referring to the evidence given at the

inquest and in not filing a transcript of the evidence so taken with the grand jury, and in using this transcript at the final trial to refresh the witnesses' memory.

(3) The Commonwealth's attorney in argument made statements not supported by the evidence, and misstated the evidence of a witness to the prejudice of appellant.

(4) The court erroneously permitted the Commonwealth's attorney to ask appellant why he had not testified at the coroner's inquest, and in argument to comment upon his failure to do so.

(5) The court erroneously refused appellant bail after a mistrial.

Poyner left Murray, Kentucky, in an automobile late Sunday afternoon, October 17th, with Myrtle Hale, Frances Odle and Rex Darnell, and drove through Mayfield toward Paducah about two miles to Jesse Miller's road house. All of the members of the party were drinking. They reached the road house about 5:30 p. m.; stayed there a while, then returned to Mayfield, where a half pint of bootleg whiskey was bought, and then went back to Miller's road house, reaching there around 7:30 p. m. Darnell seems to have remained in the car, but the others went inside. There were some 20 or more persons in the road house, and from the evidence presented most everyone there was drinking.

Gorrell rode out to the road house with John McClure, a minister of the Gospel, who was working for a garage known as The Anderson Motor Company. McClure went to the road house in answer to a call to fix a flat tire on a car there. It was raining when they reached the Miller place. Gorrell started helping McClure take the tire off the wheel, but he stopped when it began raining harder and went inside. McClure testified that, after he told Gorrell that he was going to take the tire back to town to fix it, Gorrell said that he would wait for him until he came back. When the tire was fixed McClure stated that he stepped insiae the road house and asked for Maurice Gorrell and that he found him in a booth on the south side of the building talking with two fellows. He told Gorrell that he had the tire fixed and that he was ready to go. McClure stated that the three stopped talking when he stepped up, and that Gorrell told him that he did not believe he

would go now, and he asked him the second time to "come on, let's go." McClure testified that appellant Poyner was sitting in the booth, and that Poyner looked up at him and said, "You had better take that damn fellow with you, he might get killed at a damn place like this." McClure stated that this happened something like an hour and a half before Gorrell was stabbed.

Poyner and his party and Gorrell were all in the road house for an hour or more prior to the time Gorrell was stabbed. The stabbing was done at approximately 8:30 p. m. There is evidence that Gorrell was drinking also. It is not clear how the difficulty started, but it seems that shortly before he was stabbed, Gorrell backed up against the table in the booth where the girls were sitting and exchanged some words with Myrtle Hale as she got up out of the booth to go toward Poyner, who had previously left the booth to place a nickel in the victrola. According to the testimony of McClure, and from other evidence in the record, Gorrell and Poyner had evidently had some words prior to the time Myrtle Hale left the booth. Shortly after she left the booth Gorrell took off his coat and gave it to Pete Clark, who worked as "bouncer" at the road house for Jesse Miller, and stepped out on the floor.

After Myrtle Hale joined Poyner they danced around the floor and back toward where Gorrell was standing. In the meantime Poyner had asked Myrtle what Gorrell said to her and she told him to "skip it." There is strong indication that Gorrell started toward Poyner, and, according to the testimony of Poyner and other witnesses, he struck at Poyner with his fist. On this point, however, Clark, who had walked to the place where the three were, testified that he had his hand on Gorrell's shoulder and that Gorrell did not strike at Poyner. Clark stated that they were in an argument when he reached the scene. Myrtle Hale said that Gorrell struck at Poyner with his fist doubled up. Poyner said that he saw Gorrell pull out a knife and start toward him, and that he threw up his arm and knocked the lick off. At this time Poyner stuck a knife in Gorrell's abdomen just below the ribs, which stabbing resulted in Gorrell's death. No other witness testified that he saw Gorrell with a knife, and no knife was found in his clothing after the fatal stabbing. Gorrell

seems to have walked toward a door leading out of the road house and was caught by Jesse Miller. Miller and others laid him on the floor and examined his wound. He was immediately taken to the Fuller-Gillium Hospital, and, according to. the testimony of Dr. Fuller, Gorrell died from the knife wound two or three minutes after reaching the hospital.

Poyner and Myrtle Hale started to leave the road house immediately after Gorrell was fatally wounded, but were stopped by Jesse Miller, Pete Clark and others. Both Miller and Clark testified that they hit Poyner and knocked him and Myrtle Hale down in their efforts to stop them from getting away. The sheriff and the Commonwealth's Attorney were immediately notified, and upon their arrival Poyner was arrested and a number of the persons who were at.the road house were taken into Mayfield to the court house, where a coroner's inquest was held. A transcript of the testimony given at the inquest was taken. Myrtle Hale and Frances Odle did not testify, and both were placed in jail. Poyner refused to testify at the inquest. Frances Odle got out of jail by paying a fine, and when she did so she made a statement about the stabbing of Gorrell. Myrtle Hale got out of jail the morning after she was placed there, and seems to have made a statement at that time. She was released on bond and was later indicted in the case. She was still under indictment when Poyner's last trial was held. Appellant complains bitterly of the treatment he received at the road house after he stabbed Gorrell, and of the manner in which the inquest was held.

Appellant cites section 110 of the Criminal Code of Practice in support of his contention that he was entitled to a copy of the transcript of the evidence taken at the coroner's inquest Sunday night, October 17, 1937. The last sentence of section 110 reads as follows:

> "Any person indicted by any grand jury for any crime or misdemeanor shall have a right to procure a copy of said stenographic record or any part thereof by paying the prescribed fee for said report."

He cites the case of Turk v. Martin, 232 Ky. 479, 23 S. W. (2d) 937, in which it was held that any person indicted by a grand jury shall have a right to procure a copy of the stenographic record made before the grand

jury concerning his indictment by paying the prescribed fee for the report. No such provision is contained in section 530 of the statutes. This section reads as follows:

"The coroner shall swear witnesses, and commit to writing the substance of the evidence given before such jury, designating each witness and his testimony. He shall, furthermore, recognize the witnesses examined before him to appear before the circuit court on the first day of the next term, and shall forthwith return the recognizances, with the inquest and testimony so taken, to the circuit court clerk's office of the county."

It is not required by the statute that testimony taken at the inquest be turned over to the grand jury, or furnished the accused.

In an affidavit for a continuance dated November 29, 1937, appellant stated that, upon the return of the indictment by the grand jury, his attorney applied to the grand jury's stenographer for a copy of the transcript of the evidence introduced before the jury pertaining to his alleged crime, and that he had received such a copy which consisted of only 13 pages. His complaint, therefore, does not fall within the realm of the case of Turk v. Martin, supra, because in that case a copy of the transcript was denied the person indicted. The question narrows down to whether or not error prejudicial to appellant was committed when only a few of the witnesses appearing at the coroner's inquest were brought before the grand jury, and that while before the grand jury they were shown, and asked and permitted to read, statements made by them at the inquest, and then asked if the statements were true, when no part of the statements made at the inquest and referred to before the grand jury were contained in the copy of the transcript of grand jury testimony which appellant's attorney was furnished. While the procedure followed on the night of October 17, 1937, at the road house following the fatal stabbing of Gorrell, and at the coroner's inquest in Mayfield, was somewhat unusual, we are constrained to conclude that no substantial right of the appellant was prejudiced in this respect. There was no duty on the Commonwealth's Attorney to present evidence to the grand jury other than that sufficient to warrant an indictment by the jury.

Appellant's second contention has been discussed, in the main, in connection with his first contention, with the exception of the action of the Commonwealth's Attorney in using the statements made at the coroner's inquest to refresh the memory of witnesses on the final trial. A review of the record reveals no prejudice to appellant's substantial rights resulted from the manner in which the Commonwealth's Attorney referred to the statements made at the coroner's inquest. See Patterson v. Commonwealth, 256 Ky. 745, 77 S. W. (2d) 14; Pruett v. Commonwealth, 199 Ky. 35, 250 S. W. 131; Canterberry v. Commonwealth, 222 Ky. 510, 1 S. W. (2d) 976.

Appellant's third contention is based upon the following statement made by the Commonwealth's Attorney in his closing argument to the jury: "The witness, John McClure, told the deceased to go into the road house while he returned to town to fix the tire."

From the record of McClure's testimony referred to supra, this was an erroneous statement. The statement, however, did not substantially prejudice appellant's rights, because it could not have become the basis for any argument upon which the Commonwealth's Attorney attempted to prove the guilt of appellant. Why Gorrell went in the road house, in view of all the evidence, could make little difference, because he had stayed there an hour or more on his own accord prior to the time he received his fatal wound at the hands of Poyner, who admitted sticking a knife in him. As pointed out in Drake v. Commonwealth, 263 Ky. 107, 91 S. W. (2d) 1009, improper arguments must be found to be not only improper, but also substantially prejudicial to the accused to warrant reversal. While the statement complained of should not have been made, we must conclude, in view of all the evidence in the case, that it was not such a statement as would prejudice the jury against appellant.

The fourth contention is predicated upon the view that the court erred in permitting the Commonwealth's Attorney to ask appellant why he had not testified at the coroner's inquest, and to comment upon his failure to do so before the jury. Section 1645 of the Statutes is cited by appellant. Section 1645 provides that in all criminal and penal prosecutions the defendant on trial, on his own request, shall be allowed to testify in his own

behalf, but that his failure to do so shall not be commented upon or be allowed to create any presumption against him. There is no reference in this section to a proceeding at a coroner's inquest, which proceeding is not one that comes within the meaning of section 1645. In the case of Gray v. Commonwealth, 195 Ky. 307, 242 S. W. 8, a new trial was ordered because the prosecuting attorney commented upon the failure of the defendant to testify at the trial. In this case Poyner not only testified at his trial, but admitted sticking the knife in Gorrell. The Commonwealth's Attorney's reference to Poyner's failure to testify at the coroner's inquest, therefore, could not have prejudiced Poyner's rights in any substantial manner. See McDonald v. Commonwealth, 177 Ky. 224, 197 S. W. 665; Ridner v. Commonwealth, 242 Ky. 557, 46 S. W. (2d) 1102.

Appellant's last contention is that the court erroneously refused him bail after a mistrial at the November 1937 term of court. It appears from the record that appellant filed a motion for bail on December 17, 1937. The motion was overruled and the following order to that effect entered on December 22, 1937:

"The defendant's motion for bail coming on this day to be heard and by agreement, the transcript of evidence heretofore had on the trial of this case is submitted to the Court and filed by the Commonwealth as evidence to be considered on the trial of said motion for bail and the court being sufficiently advised from said proof, overruled said motion and refused to grant bail to the defendant, Byan Poyner, to which ruling of the court said defendant excepted and prayed an appeal to the Court of Appeals which is granted."

Section 16 of the Constitution provides:

"All prisoners shall be bailable by sufficient securities, unless for capital offenses when the proof is evident or the presumption great * * *"

In capital cases, therefore, the matter of bail or no bail is in the sound discretion of the court. Commonwealth v. Stahl, 237 Ky. 388, 35 S. W. (2d) 563. It is clear from the order entered on December 22, 1937, denying appellant bail that the court acted within its sound discretion, since the transcript of evidence taken at the first trial was before the court. In any event this

did not enter into the question of whether the accused had a fair and impartial trial on his second trial. It is our view, therefore, that the court's refusal to grant bail to appellant violated no right of appellant which would warrant reversal in this case.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.