**Henry Rogers ANDERSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 16, 1961.

As Modified on Denial of Rehearing Feb. 23, 1962.

Certiorari Denied March 26, 1962.

See 82 S.Ct. 847.

John Y. Brown, Brown, Sledd & McCann, Lexington, Frank Haddad, Jr., Louisville, for appellant.

John B. Breckinridge, Atty. Gen., Troy Savage, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

The appeal is from a judgment sentencing Henry R. Anderson to death pursuant to a jury verdict finding him guilty of murder. The case has a number of unusual aspects and has presented troublesome problems.

The judgment appealed from was entered at a third trial, following two previous trials which had resulted in hung juries. At the first trial Anderson was represented by counsel; the defense was insanity; the jury was unanimous in belief of guilt but hung on the question of whether the punishment should be death or life imprisonment. At the second trial Anderson refused to have counsel and conducted his own defense, which was that the charge and the evidence against him were the result of a gigantic conspiracy engineered by his former employer, the General Electric Company, in which the newspapers, the prosecuting attorneys, and the courts had joined; the jury hung on the question of guilt. At

the third trial Anderson again refused counsel and conducted his defense on the same theory of a conspiracy; over his objections the court gave an insanity instruction; the jury found him guilty and fixed death as the punishment.

The circuit court granted an appeal pursuant to Anderson's motion. However, it was only through the individual efforts of the court reporter and the volunteered assistance of counsel who had represented Anderson on the first trial, with which efforts and assistance Anderson would not cooperate, and the dispensation of this Court in granting an extension of time, that the record was prepared and filed in this Court. Thereafter Anderson failed to file a brief or otherwise pursue the appeal, rejected offers of assistance from his former counsel, and made assertions accusing members of this Court of being involved in the conspiracy against him. This Court was reluctant to dismiss his appeal and thus foreclose his rights, feeling that under the special circumstances of the case the question of whether he had received a fair trial should be reviewed regardless of his default. Accordingly, this Court appointed to represent Anderson on this appeal, over his objection, John Y. Brown and his associates in the law firm of Brown, Sledd & McCann of the Fayette County Bar, and Frank E. Haddad, Jr., of the Jefferson County Bar. These gentlemen, at great personal sacrifice and with the interests of justice as their sole objective, have made a presentation of the appeal that could not be excelled, offering in briefs and oral argument their sincere and earnest contentions that errors occurred requiring a reversal of the judgment. Anderson could not have received better representation from any source, and this Court wishes to commend these attorneys for the splendid service they have performed in carrying out the public obligation imposed upon them.

Before undertaking a discussion of the issues presented on this appeal we consider it essential to state briefly the nature of the case against Anderson, because we believe

that the question of whether he received a fair trial must be viewed in the light of what proof of guilt was presented and what defenses were available.

Three apparently disinterested eyewitnesses testified that Anderson stepped out of his parked automobile near the church of which Dr. E. A. Terry, Jr., was a member, as Dr. Terry was about to enter the church on a Sunday morning, and shot him three times at close range. This testimony together with other evidence established a clear case of premeditated murder. Obviously, only two possible defenses were available to Anderson. One was insanity. The other was to attack the credibility of the Commonwealth's witnesses, either by independent evidence of facts contrary to those testified to by them or by showing that they had cause to testify falsely.

At the first trial the sole defense was insanity. This defense was not successful in that all of the jurors believed Anderson to be guilty of murder, their differences of opinion being only as to the extent of punishment. The medical evidence at the first trial was strongly convincing that Anderson at the time of the shooting was sane under the established tests of legally responsible sanity. The defense of insanity therefore held little promise of being a successful one at the time the third trial commenced and, as hereinbefore stated, Anderson did not rely on that defense at either the second or third trial.

As to his other possible defense, there apparently was no available evidence of facts contrary to those testified to by the eyewitnesses for the Commonwealth, because at the first trial, when Anderson was represented by able counsel, no effort was made to produce such evidence. Therefore, the only remaining method of attacking the probity of the Commonwealth's evidence was by showing that the witnesses had cause to testify falsely. This is the method that Anderson employed at the second trial, with partial success, and again employed at the third trial.

We shall view the claims of error against the background of the circumstances above stated.

The primary claim is that the trial court should have forced counsel upon Anderson over his positive and vehement rejection of the court's efforts to induce him to accept counsel. The contention is that the rejection of counsel was not made "intelligently, competently, understandingly and voluntarily," within the rule stated in Gholson v. Commonwealth, 308 Ky. 82, 212 S.W.2d 537, because Anderson was not mentally capable of making an intelligent, competent and understanding decision of the question of his need for counsel. Accordingly, it is argued, he was in effect denied his constitutional right of counsel.

Before the first trial the judge had caused Anderson to be examined by three psychiatrists to determine whether his mental condition would permit a trial. They filed a joint report stating that he was suffering from "Schizophrenic disorder, Paranoid type," but that he was of superior intelligence and was completely oriented as to time, place and person. In separate reports two of the doctors stated without qualification that Anderson's mental condition would permit a trial. One said: "he is in condition mentally to secure a fair trial by being able to make a rational defense, employ, advise with and discharge counsel, and conduct his defense generally in an intelligent way. * * * His mental thought processes are well-preserved, and his capabilities of organization and reasoning are intact. * * *" The other said: "It is my opinion that Anderson is mentally capable of employing, advising with counsel and assisting in the conduct of his defense. * * * his intelligence is high, his ability to organize his thoughts is intact and, except for the basic delusions, his reasoning power is intact." The third doctor stated: "Anderson is capable of securing a fair trial except, in my opinion, for one fact. His entire thinking stems from a delusion which he believes to be true. Therefore, his rational defense stems from a false position

and is only rational as it supports the delusion."

The delusion to which the doctors referred was the delusion of persecution by the General Electric Company, the newspapers, various public officials, etc., leading Anderson to take the position that the prosecution was a conspiracy to "frame" him. Of course this theory of persecution and conspiracy was the one on which he conducted his defense. It must be remembered that hardly any other theory of defense was available to him.

Aside from the majority opinion of the examining doctors that he was capable of standing trial and conducting a rational defense, there is the fact that Anderson was a graduate of the Notre Dame Law School and had been admitted to practice law in Indiana, and the further fact that his pro se defense at the second trial was successful to the extent that he avoided a conviction. These facts were entitled to consideration as bearing on the question of his ability to defend himself without counsel at the third trial.

It is argued that Anderson's tactics during the course of the trial, in being unruly and obstreperous, insulting the witnesses, and otherwise conducting himself so as to antagonize the judge and the jury, are proof that he was not capable of defending himself fairly. However, even had counsel been forced upon him, there is no assurance that he would not have succeeded in engaging in antagonistic conduct in the courtroom. Furthermore, who is to say that the use of such tactics as he employed was not the best strategy under the circumstances?

In the final analysis we come to the question of what it would have availed Anderson to have had counsel. It is reasonably apparent that counsel would have insisted, as at the first trial, upon relying on insanity, which defense was of doubtful efficacy because of the medical opinions that Anderson was legally sane. The defense of conspiracy unquestionably could not have been

presented with sincerity by counsel. Actually, by reason of his belief in it, Anderson was best qualified to present this defense himself.

■ In view of all of the circumstances we cannot say that Anderson was deprived of a fair trial, or of his right to counsel under the state and federal constitutions, by being permitted at his insistence to represent himself without counsel.

■ A closely related contention is that the court erred in not impaneling a separate jury, in accordance with Section 156 of the Criminal Code of Practice, to try the question of whether Anderson was presently of unsound mind and therefore not capable of being tried. The holding of such an inquest is within the sound discretion of the trial court. Robinson v. Commonwealth, Ky., 243 S.W.2d 673; Murrell v. Commonwealth, 291 Ky. 65, 163 S.W.2d 1; Denny v. Commonwealth, 274 Ky. 419, 118 S.W.2d 778. In view of the psychiatrists' reports and the other factors above mentioned, we cannot say that the court abused its discretion in not holding such an inquest. As we construe the Code provision it is not sufficient to preclude a trial that the defendant have a mental unsoundness in one particular area, if generally his thought processes and his powers of organization and reasoning are intact. Here the evidence was that Anderson's mental illness was limited to the area of certain delusions.

It is next contended that the court erred to Anderson's prejudice in conducting night sessions during the course of the trial. The first day of the trial, a Monday, was devoted to the selection of the jury. On Tuesday the taking of evidence began. The morning session ran from 9:30 to 1:30 and the afternoon session from 3:00 to 6:30. Over Anderson's objection a night session was held, running from 8:00 to 11:30. On Wednesday the morning session was from 10:00 to 12:15, the afternoon session was from 1:45 to 5:30, and there was a night session from 7:30 to 9:30. On Thursday

there was another night session, lasting until 10:00 p. m. On Friday the afternoon session ended at 4:30 and there was a short night session from 7:30 to 8:35. At that time the evidence was completed. The trial concluded with the holding of the closing arguments on Saturday afternoon.

The argument is that Anderson was prejudiced by the night sessions because they exhausted him and because they did not leave his evenings free to make preparation for the following day sessions. With respect to the matter of lack of time for preparation it must be remembered that Anderson had gone through two previous trials, which afforded him a great deal by way of preparation. Also, the fact that he had to make his own preparation was due to his voluntary act in rejecting counsel. With respect to the matter of exhaustion, it is apparent from the record that the length of the sessions was due almost entirely to the tactics of Anderson in engaging in endless and repetitious cross-examination of the Commonwealth's witnesses. The record shows that of the 951 pages of transcript embodying the testimony for the Commonwealth, only 109 pages consisted of direct examination of Commonwealth witnesses. The second trial, by reason of similar tactics of Anderson, had lasted three weeks.

■ Under the particular circumstances we do not feel that the court abused its discretion in attempting to confine the period of the trial to a reasonable number of days. The record does not reflect that Anderson was actually prejudiced or impaired in the presentation of his defense by being compelled to undergo the night sessions. See Cassell v. Commonwealth, 248 Ky. 579, 59 S.W.2d 544.

It is contended that improper and prejudicial comments on Anderson's failure to testify in his own behalf were made by the Commonwealth's attorney. During the closing argument the latter said:

"Now I want to remind you of one thing, the defendant put twenty-five witnesses on that stand but from October 26, 1958 until today not a single witness put on there by the defendant has denied this killing.

"It has not been denied. Now remember that."

\*   \*   \*   \*   \*   \*

"He keeps harping about little Audrey and her testimony about the details of Dr. Terry's life but again not a single person took the stand out of the twenty-five that he put on there that denied anything she said, not one of them."

■ These comments fall into the class of *indirect* references, which are not considered prejudicial unless they are reasonably certain to direct the jury's attention to the defendant's failure to testify. Neal v. Commonwealth, Ky., 302 S.W.2d 573. Statements to the effect that the Commonwealth's evidence was "not denied," or was "uncontradicted by any witness," or that "No one denies the commission of the crime," when not unduly repeated or emphasized, have been held not prejudicial. See Johnson v. Commonwealth, 94 S.W. 631, 29 Ky.Law Rep. 675; Farley v. Commonwealth, 165 Ky. 600, 177 S.W. 431; Wallace v. Commonwealth, 167 Ky. 277, 180 S.W. 381; Ridner v. Commonwealth, 242 Ky. 557, 46 S.W.2d 1102; Hanks v. Commonwealth, 248 Ky. 203, 58 S.W.2d 394; Neal v. Commonwealth, Ky., 302 S.W.2d 573. It has been held not improper to comment on the failure of the defendant to introduce other witnesses in his behalf. Lake v. Commonwealth, Ky., 104 S.W. 1003.

■ The fair import of the comments here involved is that none of the witnesses put on by the defendant denied the fact of the killing, and only by remote indirection do they call attention to the fact that the defendant himself did not testify. In our opinion these comments do not fall into the prejudicial category.

During his closing argument the Commonwealth's attorney also mentioned the testimony of the arresting officers that when Anderson was apprehended and asked if he had killed Dr. Terry his answer was simply, "No comment." The attorney commented on this to the effect that an innocent man would have responded to the question by denying the killing. It is argued that this reference and comment amounted to calling the attention of the jury to the defendant's failure to testify.

■ The testimony as to Anderson's failure to deny the killing in response to the officers' question when apprehended was competent evidence. See Barton v. Commonwealth, 240 Ky. 786, 43 S.W.2d 55; State v. Bartlett, 55 Me. 200; People v. Richardson, 83 Cal.App. 302, 256 P. 616. Therefore, it was not improper for the Commonwealth's attorney to call attention to that testimony in his closing argument. It did not constitute a violation of the rule against commenting on the defendant's failure to testify *at the trial*. See Poyner v. Commonwealth, 274 Ky. 813, 120 S.W.2d 649.

■ Several times during the course of the trial Anderson, in examining or cross-examining witnesses, made direct statements of fact to which the Commonwealth's attorney objected on the ground that the statements were not under oath and not from the witness stand. In one objection the attorney said, "If you want to testify you should take that stand." It is contended that the objection and comment had the prejudicial effect of calling to the jury's attention the failure of the defendant to testify. We find no merit in this contention. The Commonwealth's attorney was entitled to object to Anderson's making statements of fact in examining witnesses, and it would have been difficult to make a proper objection in any other form than that he employed. Also, the objections did not point up a failure to testify, but rather an attempt to testify without being under oath.

■ It is suggested that attention was again improperly called to the failure of the defendant to testify when, at the beginning of the presentation of the defendant's case, the Commonwealth's attorney asked the court to advise the defendant that if he wished to testify himself he must do so before calling any other witness. At the time this request was made it was not known whether the defendant did intend to testify, so it could not constitute a comment on failure to testify. In view of Anderson's lack of extensive experience in the trial of cases it may be considered to have been merely a helpful gesture on the part of the Commonwealth.

■ The contention is made that the Commonwealth's attorney improperly made reference to the parole law in his closing argument, by the following statements:

> "You will note in those instructions that there is no such thing as life without parole in these instructions, no such law has been passed.

\* \* \* \* \* \*

> "Well, gentlemen, let me say this to you, do not, do not return a verdict under which he will get the gun back and at some time this man, through revenge can kill again. Let's not, let's not, gentlemen have the blood of some other victim on our hands because we were afraid to meet face to face the full responsibility which fate has dealt us."

The first of these statements was in response to a portion of Anderson's closing argument in which he had made reference to the possibility of imposing punishment of life imprisonment without parole. A bill to permit such punishment for murder had been introduced in the Legislature but had failed to pass. We think the statement was proper by way of response and that it did not urge the possibility of parole as a reason for imposing the death penalty so as to be prejudicial within the principles laid

down in Broyles v. Commonwealth, Ky., 267 S.W.2d 73, 47 A.L.R.2d 1252.

■ The second statement again was in response to a portion of Anderson's argument, in which he had pointed to the gun introduced in evidence and said "the gun is my gun and I want it back." The statement in no way constituted a reference to the parole law.

It is argued that the second statement was an improper attempt to invoke prejudicial influences. Reliance is had on Berry v. Commonwealth, 227 Ky. 528, 13 S.W.2d 521, 530, where the argument held prejudicial was: "Send him to the penitentiary * * * and in a few years some soft-hearted Governor will pardon him and turn him loose on society to kill somebody else." In that case the defense was insanity, and the evidence had disclosed that on two occasions prior to the killing the defendant had been committed to an asylum but had been released. Following his first release he had attempted suicide and following the second he had committed the homicide for which he was then being tried. The argument was held prejudicial because it was calculated to influence the jury to consider the ineffectiveness of previous determinations of insanity of the defendant. There was no such situation here. It seems to us that so long as death continues to be a permissible punishment the prosecuting attorney must be allowed in some way to ask the jury to impose that punishment and that for him to urge that the death penalty should be imposed as a protection to society is a permissible form of argument.

■ Another contention is that the instruction stating what punishments could be imposed upon a finding of guilt was prejudicially erroneous in that it listed death before life imprisonment, whereas the statute, KRS 435.010, lists life imprisonment first. It is argued that putting death first in the instruction gave it undue prominence and suggested to the jury that death was the first choice. We are not convinced that the order in which the penalties were stated in the instruction could have had any real significance to the jury. It is our opinion that the failure of the court to follow literally the words of the statute was not prejudicial. While the order of the penalties was changed in the 1942 revision of the statutes it is apparent from an examination of other criminal statutes that this was done merely to establish uniformity and consistency in the listing of alternative penalties.

■ The claim is made that error was committed in permitting the jurors to make telephone calls to their homes after they had been sworn and the indictment had been read to them but before the taking of evidence began. These calls were made in the presence of all the jurors and of a deputy sheriff. An affidavit of the latter shows that the calls related merely to arrangements for clothing and toilet articles anticipated to be necessary by reason of the confinement of the jurors during the course of the trial. There was no separation of the jury as in Wells v. Commonwealth, 313 Ky. 371, 231 S.W.2d 30. We think the claim of error is not well taken. See Glenday v. Commonwealth, 255 Ky. 313, 74 S.W.2d 332.

■ A further contention is that the trial court committed error in permitting one of the witnesses for the prosecution, who was an attorney, to remain in the courtroom when other witnesses were excluded by rule under CR 43.09 (which is applicable to criminal cases by reason of KRS 447.-155). This contention cannot be upheld, in view of the specific holding in Allen v. Commonwealth, 10 Ky. 582, 9 S.W. 703, that the rule does not apply to attorneys of the court.

■ Finally, it is argued that the defendant was prejudiced in the presentation of his case by the fact that a number of the witnesses subpoenaed by him were not present in court on the opening day of the trial and some did not appear at such a

time as to enable him to present them in the order in which he desired. He had summoned some 85 witnesses and obviously it was not feasible for all of them to be present all during the trial. It is not shown that he was deprived of the testimony of any witness nor is it pointed out in what specific way he suffered prejudice by reason of the order in which he was compelled to present his witnesses. Under these circumstances we find no substantial violation of his rights.

Upon an examination of the entire record it is our opinion that no error was committed prejudicial to the substantial rights of the appellant, that there was no violation of due process, and that he received a fair trial.

The judgment is affirmed.