**Ralph BAKER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 30, 1972.

Lester H. Burns, Jr., Somerset, for appellant.

Ed W. Hancock, Atty. Gen., Jackson D. Guerrant, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

The appellant, Ralph Baker, was indicted for the murder of his brother-in-law, Robert Jones, in a shoot-out in Leslie County, and was found guilty of voluntary manslaughter and sentenced to serve twenty-one years in the penitentiary, the maximum penalty for the offense. We affirm the conviction.

The victim, Robert Jones, and his brother, Russell Jones, two young men in their early twenties, drove to town around noon in Robert's truck to purchase a stereo tape player for installation in one of their vehicles, and about 2 P.M. returned to a store operated by another brother-in-law, Claude Henninger. They left there but returned about 6 P.M. By this time, it was clear that the Jones brothers had drunk their fill of beer. Whatever happened while they were in the store is not clear, but apparently the visit was unpleasant, for they left the store and bought gasoline from a merchant across the road and not from Henninger. They returned about 10 P.M., parked the truck across the road where they had bought gasoline, Henninger went out to meet them, and as to what happened from that point on two conflicting tales have been told.

According to the accused both Jones boys were drunk and were holding Henninger at gunpoint, and Henninger's wife urged him to intercede. He said he was about to drive his own wife and baby to their home when Henninger's wife asked

him, but delayed his departure, took time to get a scuttle of coal and stoke a stove, then got into his Chevrolet and drove to the scene of the confrontation, opening the car window en route so that he could talk to the Jones brothers. He stated that Robert fired his rifle at him, piercing the windshield, and he returned the fire through the open window of his car. He admitted that he fired four shots rapidly, but said Robert fired the first and last shots. Baker said that the other brother, Russell Jones, also fired at him, which Russell denied when he had his turn to testify. Baker said he saw Robert stoop by his truck and feared he was reloading his rifle, so he (Baker) left, gathered up his wife and baby and drove to his father's home several miles away from where he tried unsuccessfully to notify the police by telephone, so went to bed and went to sleep. He said he did not know that Robert had been killed. His wife corroborated his version of events even to Baker's telling Henninger that he was driving to his father's to phone the police.

On the other hand, the surviving brother, Russell Jones, testified that Baker fired first, that he (Russell) had no gun and did not take part in the fracas. Russell said as soon as Baker drove up, Claude Henninger left. Russell also said that after Robert had gotten out of his truck he reached back into it to get his rifle when he saw Baker arriving. At one point Russell said Robert fired first, but on redirect examination he reasserted that Baker fired first.

In the face of such conflicting testimony, the admitted exchange of gunfire, the bullet riddled Chevrolet of Baker's, the unquestionable identification of the firearms used and the coroner's testimony as to the cause of Robert's death, a case for the jury was made out. What became of Claude Henninger is an unanswered question except that he left the community while Baker was in jail before he made bail.

In view of the verdict finding Baker guilty of the lesser offense of voluntary manslaughter instead of murder, we can not accept the contention that the jury acted through passion or prejudice despite the fact that they assessed the highest penalty for voluntary manslaughter, nor can we find the presence of the coroner and another witness in the courtroom during part of the trial before they testified, was a sufficient reason to justify a new trial. The coroner told only the cause of Robert's death and the other witness testified in rebuttal to the effect that it was impossible for one of the defense witnesses to see what she said she saw from where she said she was when she saw it.

One of the numerous issues raised in Baker's motion for a new trial concerned the refusal of the trial court to permit the introduction of evidence of good reputation for peaceableness on the part of the accused. This sort of evidence is admissible in a criminal trial if properly introduced. Shell v. Commonwealth, 245 Ky. 223, 53 S.W.2d 524; Pickelseimer v. Commonwealth, 217 Ky. 608, 290 S.W. 498; Perara v. United States, 8 Cir., 235 F. 515, 10 A.L.R. 1. In the case at bar, the issue was raised in this way in questioning the accused:

"Q. Have you ever in your lifetime been indicted for any violation of any law?

Objection by Mr. Hieronymous (Commonwealth Attorney).

Sustained by court.

Q. Mr. Burns: I cannot open this up, his character?

Objection by Mr. Hieronymous.

Sustained by court.

To which ruling of the court the defendant objects and excepts."

Whether Baker had ever been indicted was not relevant, but there was no

avowal placed in the record as to what the accused or any of his reputation witnesses would say which, of course, counsel was entitled to have inserted in the record if he wished, RCr 9.52. The purpose of an avowal is to advise the trial court fully of the nature of the proposed evidence and to place it in the record for the scrutiny of a reviewing court in case of an appeal, and where the offer involves not only the witness on the stand, but other witnesses, counsel should have such other witnesses present in court or within call. In fact, error can not be predicated on rejection of evidence when no avowal is made which would disclose what answers would be given if the witness or witnesses were permitted to testify. (For collection of cases on this point, see Ky.Digest, Criminal Law, Section 670.)

■ Appellant asserts that the trial court's instruction, "If you find the defendant guilty of wilfull murder you will fix his punishment at death or confinement in the state penitentiary for life in your discretion," was highly prejudicial in that it emphasized "death" by stating it first whereas the statute (KRS 435.010) says, " * * * shall be punished by confinement in the penitentiary for life, or by death, in your discretion." As stated in Stanley on Instructions, Section 869, of the 1971–72 Supplement, the instruction should be worded in conformity to the statute, but it is not prejudicial to list "death" first, Anderson v. Commonwealth, Ky., 353 S. W.2d 381 (1962). The order of punishment was reversed in the general statutory revision of 1942 in order to establish uniformity and consistency with other criminal statutes in the listing of alternative penalties.

The jury saw the witnesses, judged their credibility, weighed the evidence, and reached its verdict. There was sufficient evidence to support the verdict, and we find there were no prejudicial errors committed at the trial.

The judgment is affirmed.

All concur.